696 A.2d 55

EDWARD H. MARINELLI, JR., JOHN J. PANARELLO, BARBARA L. PANARELLO, AND BARBARA DAIUTOLO, PLAINTIFFS–APPELLANTS, v. MITTS & MERRILL, A FOREIGN CORPORATION, MIL–PAC SYSTEMS, INC., A NEW JERSEY CORPORATION, ACCURATE INDUSTRIES, INC., A NEW JERSEY CORPORATION, AEROSOL TECHNIQUES, INC., A FOREIGN

CORPORATION, ATLANTIC SYSTEMS SALES, INC., A NEW JERSEY CORPORATION, AND JOHN DOES 3 THROUGH 100, INCLUSIVE, FICTITIOUS NAME DEFENDANTS, JOINTLY, SEVERALLY, AND IN THE ALTERNATIVE, DEFENDANTS, AND WHITEHALL LABORATORIES, INC., A FOREIGN COR-PORATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted May 19, 1997—Decided July 3, 1997.

Before Judges DREIER, D'ANNUNZIO and VILLANUEVA.

*Van Syoc Law Offices,* attorneys for appellants (*Clifford L. Van Syoc* and *Anthony L. Byler,* on the brief).

*Lomurro, Davison, Eastman & Munoz,* attorneys for respondent (*Robert L. Heugle, Jr.,* on the brief).

The opinion of the court was delivered by

VILLANUEVA, J.A.D. (retired and temporarily assigned on recall).

Plaintiffs appeal from a summary judgment dismissing their negligence claim against their employer, Whitehall Laboratories, Inc., (Whitehall), brought under the intentional injury exception to the Workers' Compensation immunity, *N.J.S.A.* 34:15–8. They also appeal from a summary judgment on their claim of spoliation of evidence. They further claim that they were entitled to the production of employee interviews secured by the Personnel Department at the behest of their employer's attorney. Lastly, they appeal from an earlier order denying them leave to file a third amended complaint against related corporate entities and their employees in which plaintiffs claim those other entities and employees were also responsible for the explosion and fire that injured them while they[1] were working at the defendant Whitehall's premises in Hammonton, New Jersey.

On Friday, July 14, 1989, plaintiff, Edward H. Marinelli, Jr., had originally been instructed to shred pallets of "Sudden Beauty" hair spray. Marinelli had noticed strong fumes coming from the cans and had complained about the possible toxic effect of the fumes. The exhaust fans were inoperable or inadequate at the time, and Marinelli was told to wear a face mask. Nevertheless, Marinelli continued to experience problems breathing because of the high heat and humidity. He sought to examine the "right to know" books to determine the toxic effect of the fumes, but the material safety data sheet ("MSDS") was not in the book. Although he

---

[1] Edward H. Marinelli, Jr., John J. Panarello and Barbara Daiutolo were employees of Whitehall who asserted direct claims against Whitehall. Barbara A. Panarello asserted a claim for loss of consortium.

was temporarily taken off of this duty, he was sent back to the compactor room and continued to shred the canisters.

Marinelli continued this work on the following Monday and inserted numerous cans of the hair spray into the compactor. At some time between 3:00 p.m. and 3:10 p.m., Barbara Daiutolo approached the doorway where Marinelli was working and told Marinelli that it was time to start cleaning up. Marinelli pressed the button to initiate the compactor and attempted to leave the area, but was unable to do so before an explosion occurred. John J. Panarello was nearby. All three were injured and severely burned.

The three were employees of Whitehall Laboratories, Inc., a subsidiary of American Home Products Corporation. Counsel for American Home Products Corporation immediately came to the scene and directed the plant manager, Anthony Romano, to investigate the incident under the attorney's direction. Romano, in turn, referred the matter to the personnel director to interview the employees who could give information; ten employees were interviewed, and written summaries of the interviews were prepared. According to the attorney, the purpose of the investigation was "providing legal advice and assistance and preparing for potential litigation."

The Hammonton Fire Company was the first governmental agency to arrive at the scene. According to the report of the Hammonton Fire Marshal, the investigator observed "three subjects standing at the entrance of the [receiving] department, located on the east side of the building. After contact with the subjects it appeared that they were victims burned from the explosion. [A] strong odor that was believed to be hair spray was in the immediate area." The investigator also noted "a forklift . . . with a pallet of approximately fifteen cases of aerosol hair spray cans in front of the feed conveyor. Approximately four cases of aerosol spray [were] found under the feed conveyor and in the feed hopper." Finally, the report described that the contents of each case were "one dozen (12) of (10) oz of aerosol hair spray

(SUDDEN BEAUTY). Ingredients: SD alcohol 40, Methylene (Choride), Isbutane, Propane, Vinyl Acetate, Crotonic Acid, Copolymer, Aminomethyl Propanol, Perfume Oil, Benzyl Alcohol, PG–75 Lanolin."

On November 14, 1989, as a result of investigations, defendant Whitehall was issued five citations from the Department of Labor Occupational Safety and Health Administration ("OSHA"). Whitehall was determined to have committed the following violations: (1) using trucks and other equipment which were not permitted for a hazardous location; (2) failing to have material safety data sheets for "Sudden Beauty" hair spray at the facility; (3) failing to include the methods that may be used to detect the presence and release of hazardous chemicals in the workplace in their employee training; (4) failing to include the physical and health hazards of the chemicals present in the workplace in their employee training; and (5) failing to train their employees in specific hazards of their work areas, including fire/explosion hazards.

Soon after the explosion, Whitehall and American Home Products destroyed and disposed of substantial property, including the compactor, shredders, fans, electrical engines, cartons of "Sudden Beauty" hair spray and various other tangible items. It was this action which plaintiffs contend constituted spoliation of evidence. Many pallets containing cases of "Sudden Beauty" were on the scene, but were disposed of quickly thereafter. Although plaintiffs contend that this deprived them of evidence, enough cans of the material remained for chemical analysis and for use in any trial. Also, the contents of the cans have been analyzed and the MSDS for the product is available. When Whitehall was advised that plaintiffs were represented by counsel and a restraining order was obtained, plaintiffs' attorney was told that the shredder had been removed to a recycling area four days after the explosion and the hair spray containers had been disposed of during the clean up operation. The remaining cases of "Sudden Beauty" were sold to employees for $1 a case and were no longer available.

Plaintiffs learned that there had also been an explosion at another plant operated by a different division of American Home Products as a result of puncturing hair spray cans, but no one where plaintiffs worked had been told not to shred the cans or not to puncture them. The company also allegedly knew that if too many cans were punctured in an area without proper ventilation there would be harmful escaping vapors which were volatile and flammable as well as toxic. As previously noted, the OSHA investigation listed five violations. The OSHA file noted that the product was highly flammable, a dangerous fire and explosion risk and toxic by inhalation or ingestion.

Plaintiffs' complaint included claims against Whitehall Laboratories, Inc. for intentional injury and intentional spoliation of evidence. Claims were later made against additional defendants or entities responsible for the explosion which were ultimately settled.

On May 14, 1993, plaintiffs filed a motion to compel defendant Whitehall to produce investigatory materials, including any witnesses statements taken. On May 27, 1993, defendant Whitehall filed a motion for summary judgment to dismiss plaintiffs' complaint. The motion was denied without prejudice pending the completion of discovery. On July 20, 1993, an order was entered requiring Whitehall to provide plaintiffs with the names, addresses, telephone numbers, and titles of employees interviewed by John Anderson, an employee of Whitehall, after the explosion. Because the statements therein were deemed privileged work product and/or attorney communications, the court denied that part of the motion.

On August 27, 1993, plaintiffs filed a motion for leave to file a third amended complaint which would have substituted American Home Products Corporation and Whitehall International, Inc. for John Doe defendants. Plaintiffs discovered that Anthony Romano, the plant manager at the plaintiffs' workplace, was actually employed by a Whitehall Laboratories Division, which is a subsidiary of American Home Products. Furthermore, plaintiffs had

discovered that Richard Hill, the vice president of plant operations, also worked for American Home Products and that American Home Products and Whitehall Laboratories were legally separate entities from defendant, Whitehall Laboratories Inc., the company which employed the plaintiffs.

In addition, the third amended complaint also sought to add a seventh count alleging that Whitehall and other defendants fraudulently concealed another serious explosion which occurred at a facility owned by Whitehall's parent corporation, American Home Products. The court granted the motion to file the third amended complaint by order dated September 24, 1993. On November 30, 1993, the court entered an order vacating the September 24, 1993 order. On March 15, 1994, plaintiffs filed a motion for reconsideration of the November 30, 1993 order. At the time of the filing of the motion for reconsideration, Whitehall had already filed a new motion for summary judgment. Plaintiffs' motion for reconsideration was denied by order dated April 15, 1994.

Following years of discovery, Whitehall refiled its motion for summary judgment, as just noted, on March 1, 1994. Whitehall argued that plaintiffs' claims were barred by the exclusivity provision of the New Jersey Workers' Compensation Act since there were no facts to support a finding of a deliberate intent to injure by Whitehall, and that there were no facts to support plaintiffs' spoliation claim.

The trial court stated:

*Millison* [2] requires that there be a deliberate intention of a—of doing harm, or that there be a substantial certainty that harm will result by reason of the act, and the proof here is completely devoid of anything that establishes—in the court's opinion, anything that comes—that would justify such a determination.

The court found that an examination of the factual record showed "nothing more than the fact that we have a situation that is appropriately a [w]orkers' [c]ompensation situation and doesn't go beyond that...." With respect to plaintiffs' spoliation claims,

---

[2] *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 501 *A.*2d 505 (1985).

the court found no facts to support plaintiffs' claims that Whitehall disposed of the severely damaged machinery after the accident for the purpose of disrupting or harming plaintiffs' case. An order memorializing this decision was entered April 15, 1994.

In April 1996, plaintiffs settled their claims with the remaining defendants. On May 2, 1996, a partial stipulation of dismissal was filed. In addition, plaintiffs have or will receive approximately $360,000 in Workers' Compensation benefits.

Plaintiffs' notice of appeal states that they are appealing from the May 2, 1996, order, but they are apparently appealing the following orders:

(1) A July 20, 1993 order with respect to plaintiffs' motion to compel production of investigative materials;

(2) An April 15, 1994 order granting summary judgment in favor of defendant Whitehall Laboratories, Inc.;

(3) An April 15, 1994 order denying plaintiffs' motion for reconsideration and seeking vacation of the court's order of November 30, 1993, and allowing for the filing of a third amended complaint to add additional defendants.

Plaintiffs raise four issues: (1) Because of Whitehall's intentional actions, plaintiffs are not barred by Workers' Compensation laws; (2) The trial court erred in dismissing plaintiffs' claims of intentional spoliation of evidence; (3) The trial court abused its discretion when it denied plaintiffs' motion to file a third amended complaint; and (4) The trial court erred in denying plaintiffs' motion to compel Whitehall to produce the recordation of its employees' interviews.

## I.

Plaintiffs first assert that summary judgment should not have been granted concerning their negligence claim because a factual issue existed whether the defendant employer's actions constituted an intentional wrong under *N.J.S.A.* 34:15-8. The trial court dismissed plaintiffs' personal injury claims against defendant Whitehall based upon a provision of the Workers' Compensation Act, which provides:

> Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee . . . as well as the employer, . . . .
>
> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
>
> [*N.J.S.A.* 34:15–8.]

Plaintiffs argue that the intentional act exception applies in this case because Whitehall failed to inform its employees of the explosive nature of the "Sudden Beauty" product by not providing material data sheets. The deposition of the quality assurance manager, William Wright, intimated that Whitehall was aware of the danger associated with puncturing aerosol cans in this manner based upon the fact that such activity had caused an explosion at another Whitehall plant. According to plaintiffs, employees of Whitehall had informed their employer of their concerns about the potential danger of shredding the hair spray cans. Finally, plaintiffs note that Whitehall had received numerous citations from OSHA because of its improper actions relating to the shredding of hair spray cans. In sum, plaintiffs contend that it would be an unreasonable interpretation of the Workers' Compensation Act to grant Whitehall tort immunity in this case when they created the dangerous condition that resulted in the employees' injuries.

Whitehall properly cites to *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 501 *A.*2d 505 (1985), *aff'd,* 115 *N.J.* 252, 558 *A.*2d 461 (1989), which explains the policy reason behind the exclusive remedy bar and what level of risk exposure constitutes an intentional wrong. In *Millison,* the Court noted:

> Although we are certain that the legislature could not have intended that the system of workers' compensation would insulate actors from liability outside the boundaries of the Act for all willful and flagrant misconduct short of deliberate assault and battery, we are equally sure that the statutory scheme contemplates that as many work-related disability claims as possible be processed exclusively within the Act. Moreover, if "intentional wrong" is interpreted too broadly, this single exception would swallow up the entire "exclusivity" provision of the Act, since virtually all employee accidents, injuries, and sicknesses are a result of the employer or a co-employee intentionally acting to do whatever it is that may or

may not lead to eventual injury or disease. Thus in setting an appropriate standard by which to measure an "intentional wrong," we are careful to keep an eye fixed on the obvious: the system of workers' compensation confronts head-on the unpleasant, even harsh, reality—but a reality nevertheless—that industry knowingly exposes workers to the risks of injury and disease.

The essential question therefore becomes what level of risk-exposure is so egregious as to constitute an "intentional wrong." We are confident that the *quid pro quo* of workers' compensation—employer makes swift and certain payment without regard to his own fault in exchange for immunity from liability at law—can best be preserved by applying the "intent" analysis of Dean Prosser to determine what is an "intentional wrong" within the meaning of the Act. According to Prosser,

"the mere knowledge and appreciation of a risk—something short of substantial certainty—is not intent. The defendant who acts in the belief or consciousness that the act is causing an appreciable risk of harm to another may be negligent, and if the risk is great the conduct may be characterized as reckless or wanton, but it is not an intentional wrong."

[*W. Prosser and W. Keeton, [The Law of Torts,]* § 8 at 36 (5th ed.1984).]

[*Millison, supra,* 101 *N.J.* at 177, 501 *A.*2d 505.]

The *Millison* court thus emphasized that even an employer's knowledge and appreciation of a significant risk did not constitute the required intent. *Ibid.* The Court also stated that the Worker's Compensation Act was not meant to be "circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty." *Id.* at 178, 501 *A.*2d 505. The trial court herein properly noted that the intentional act exception is to be interpreted narrowly.

Accepting the plaintiffs' evidence as true, at best it merely presents a work-place injury caused by either gross negligence or an abysmal lack of concern for the safety of employees. But, as the Court in *Millison* noted in quoting Professor Larson:

Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character. . . . But in any normal use of the words, it cannot be said, if such an injury does happen, that this was deliberate infliction of harm comparable to an intentional left jab to the chin.

[*Millison, supra,* 101 *N.J.* at 171, 501 *A.*2d 505 (quoting 2A A. Larson, *The Law of Workmen's Compensation,* § 68.13 at 13–22 to 13–27 (1983) (footnotes omitted)).]

*Compare Bryan v. Jeffers,* 103 *N.J.Super.* 522, 523–24, 248 *A.*2d 129 (App.Div.1968), *certif. denied,* 53 *N.J.* 581, 252 *A.*2d 157 (1969) (holding the Legislature intended "intentional wrong" to be "deliberate intention rather than gross negligence"), with *Calderon v. Bollegraaf,* 285 *N.J.Super.* 623, 636–37, 667 *A.*2d 1111 (App.Div. 1995), *certif. denied,* 144 *N.J.* 174, 675 *A.*2d 1122 (1996) (expressing in *dicta* the view that "we could envision liability on the part of a corporation whose management personnel or other employees have removed safety devices so that the risk is raised to such a high level that it is practically certain that some employee would be injured. . . . [w]e can only suggest that, in the appropriate case, facts such as those in the case before us might be placed before a jury under a thesis that the removal of a safety device constitutes an intentional wrong when the employer knows there is a substantial certainty that a worker will be severely injured.").

The actions of Whitehall in this case fall far short of those in *Calderon* and are clearly outside of the standards established in *Millison.* Certainly there was no removal of a safety device or other conduct which creates a "substantial certainty that a worker will be severely injured." *Calderon, supra,* 285 *N.J.Super.* at 637, 667 *A.*2d 1111. Concededly, Whitehall, the employer, was negligent, but there was no substantial certainty of injury in this case.

The plaintiffs have not been deprived of a remedy. A remedy exists in the form of workers' compensation benefits for which they have or will receive approximately $360,000, in addition to their settlement of $1,749,999.99 received from other defendants.

We are convinced that the allegations of the complaint and supporting evidence are simply insufficient to establish the statutory intentional wrong exception to the legislatively-established exclusivity of the workers' compensation remedy. It is by this legislatively-established exclusivity that our determination must be governed.

The grant of summary judgment in favor of Whitehall was proper on this point.

## II.

Plaintiffs assert that New Jersey recognizes an independent cause of action for the destruction of evidence and cite to *Viviano v. CBS, Inc.*, 251 *N.J.Super.* 113, 597 *A.*2d 543 (App.Div. 1991), *certif. denied,* 127 *N.J.* 565, 606 *A.*2d 375 (1992), to support that proposition. In *Viviano,* we noted:

> Plaintiff's cause of action in the present case is analogous to a recently recognized cause of action for destruction of evidence which has been dubbed "spoliation of evidence." That tort had its origin in California and has been recognized in a number of other jurisdictions. The elements of that tort are: (1) pending or probable litigation involving the plaintiff; (2) knowledge on the part of the defendant that litigation exists or is probable; (3) willful or, possibly, negligent destruction of evidence by the defendant designed to disrupt the plaintiff's case; (4) disruption of the plaintiff's case; and. (5) damages proximately caused by the defendant's acts.
>
> [*Id.* at 125–26, 597 A.2d 543.]

Plaintiffs also claim that because of Whitehall's interference with their civil action, they are entitled to receive a damage award which will compensate them for the loss of the value of their case due to the lack of evidence. Plaintiffs argue that since state of mind was a disputed issue, summary judgment should have been denied, citing *Allen v. Planning Bd. Tp. of Evesham,* 137 *N.J.Super.* 359, 349 *A.*2d 99 (App.Div.1975), to support that proposition. Plaintiffs note that other foreign courts have held that the Workers' Compensation Act does not preclude an action for spoliation of evidence. *See Coca–Cola Bottling Co. of Los Angeles v. Superior Court,* 233 *Cal.App.*3d 1273, 286 *Cal.Rptr.* 855, 866 (1991). Finally, plaintiffs urge that since the claims regarding the spoliation of evidence are not claims of personal injury, the Workers' Compensation Act exclusivity remedy provision does not apply.

While we recognize that the *Viviano* court acknowledged that "[i]mmunizing the willful destruction or concealment of evidence would not further the policy of encouraging testimonial candor," *Viviano v. CBS, Inc., supra,* 251 *N.J.Super.* at 126, 597 *A.*2d 543, the *Viviano* court never specifically adopted an independent cause of action for the intentional spoliation of evidence. Rather, the

court analyzed the cause of action for willful concealment of evidence.

The issue of whether this court should adopt the tort of spoliation of evidence, and whether plaintiffs can satisfy the requisite elements, is moot because the plaintiffs do not appear to have been damaged by any lack of evidence. Cans of the "Sudden Beauty" product were available for testing and the material data sheets described the contents and hazards of the product.

Additionally, there is no question that the ventilation was inadequate and that the cans were being shredded. The fact that the actual shredder, fans and pallets of the material are not available has not harmed plaintiffs' case. Moreover, as revealed by Whitehall, plaintiffs have settled their case against other defendants for approximately 1.75 million dollars indicating that they have not suffered for lack of evidentiary proofs to any material extent.

The five elements of a spoliation claim are set forth in *Viviano*, but plaintiffs have shown no design on Whitehall's part to disrupt the plaintiffs' cases, the actual disruption of their cases or that there were any damages caused by the destruction of the evidence. Plaintiffs' unsupported allegation that the absence of this physical evidence may have caused them to collect less from the other defendants is pure speculation.

## III.

Plaintiffs argue that the trial court erred in denying their motion to compel production of the recordation of Whitehall's employees' interviews.

Plaintiffs acknowledge that according to *N.J.S.A.* 2A:84A–20 and *N.J.R.E.* 504, communication between attorneys and their client is generally privileged and cannot be discovered. Plaintiffs argue, however, that the trial court, based upon *Macey v. Rollins Environmental Services (N.J.)*, 179 *N.J.Super.* 535, 432 A.2d 960 (App.Div.1981), the trial court improperly held that the employee interview summaries sought were protected by the attorney client

privilege. Plaintiffs also urge that the issue should have been analyzed under the work product doctrine. *R.* 4:10–2(c).

In *In re Grand Jury Investigation,* 599 *F.*2d 1224, 1231 (3d Cir.1979), the court found that information contained in memoranda summarizing oral interviews is generally of limited utility, particularly where the witness is readily available to the opposing party. The court noted that "such documents will be discoverable only in a 'rare situation.'" *Ibid.* (citation omitted). Finally, in *Dinter v. Sears, Roebuck & Co.,* 252 *N.J.Super.* 84, 97, 599 *A.*2d 528, (App.Div.1991), we found that "plaintiffs have the duty to use the discovery procedures available before complaining that the other party has not revealed relevant information." We note that the trial court judge did require defendant to produce information regarding those employees interviewed and allowed depositions of these employees to be taken.

Plaintiffs must first attempt to obtain this material by conventional means. Even though the material is classified as work product, it is still discoverable under *R.* 4:10–2(c) if plaintiffs have "substantial need of the materials in the preparation of the case and [are] unable without undue hardship to obtain the substantial equivalent of the materials by other means." Although this is not a case where the mental impressions of the lawyer might be disclosed, plaintiffs first should try to get the evidence directly from the particular employees. If the employees are uncooperative or cannot be found, then there may be no bar to plaintiffs obtaining the materials previously assembled by the company. This, of course, will only be necessary if a defendant remains against whom the claim can be made.

Based upon the evidence before him, the judge properly denied plaintiffs' request for these statements made during interviews with defendant's employees.

## IV.

Plaintiffs urge that the trial judge erroneously denied their motion to file a third amended complaint in order to include additional defendants and additional claims. *Rule* 4:9–1 states:

A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within 90 days after it is served. Thereafter a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice.

"Amendments to pleadings should be freely granted in the interest of justice. This is especially true when the failure to join necessary parties may preclude a subsequent law suit because of the entire controversy doctrine, and where no undue delay or prejudice will result from the amendment." *Tomaszewski v. McKeon Ford, Inc.*, 240 *N.J.Super.* 404, 411, 573 *A.*2d 501 (App. Div.1990) (citations omitted). "Motions for leave to amend should be liberally granted. Such motions should generally be granted even if the ultimate merits of the amendment are uncertain." *G & W, Inc. v. East Rutherford Bor.*, 280 *N.J.Super.* 507, 516, 656 *A.*2d 11 (App.Div.1995) (citations omitted). "An application to amend must be definite and categorical, not vague or unexpressed." *Lippmann v. Hydro–Space Technology, Inc.*, 77 *N.J.Super.* 497, 511, 187 *A.*2d 31 (App.Div.1962) (quoting *Grobart v. Society for Establishing Useful Mfrs.*, 2 *N.J.* 136, 65 *A.*2d 833 (1949)). In *Cummings v. Bahr*, 295 *N.J.Super.* 374, 685 *A.*2d 60 (App.Div. 1996), this court stated that although "our reported decisions do not clearly articulate the standard of review where there is a denial of a motion for reconsideration, the standard in the Federal courts is 'abuse of discretion.' We now adopt that standard as the appropriate norm for appellate review of a denial of a motion for reconsideration." *Id.* at 389, 685 *A.*2d 60 (citation omitted).

Plaintiffs filed a motion for leave to file a third amended complaint on August 27, 1993. At that time, a certification by plaintiffs' counsel stated that American Home Products, Inc. and Whitehall International, Inc. had been identified as potential defendants through the depositions of various representatives of defendant Whitehall and affiliated corporations. Plaintiffs' attorney's certification in support of the motion to file the third amended complaint to assert an additional cause of action indicated that depositions of various representatives of Whitehall Labora-

tories, Inc. and its affiliated corporations, American Home Products Corporation and Whitehall International, Inc. disclosed for the first time that there exists a basis to assert claims against those entities. Plaintiffs requested permission to amend the complaint to bring all parties before the Court as required by the Entire Controversy Doctrine, *Rule* 4:30A, noting that there was no trial date.

The proposed third amended complaint alleged that American Home Products, Inc. had owned and inspected the plant and certain equipment which was involved in the explosion and that they had failed to warn plaintiffs of hazardous circumstances. The proposed amended complaint alleged that the company had also participated in fraud and destruction of evidence. The proposed third amended complaint also alleged that Whitehall International, Inc. was involved in the chain of distribution of defectively labelled hair spray cans, failed to warn plaintiffs and their employer adequately of proper disposal methods, and participated in the destruction of evidence. Finally, the certification and third amended complaint spelled out the circumstances by which plaintiffs discovered that American Home Products, Inc. had concealed the fact that there had previously been an explosion, due to the destruction of hair spray cans at another American Home Products, Inc. facility.

Based upon the deposition testimony of Richard Hill and Anthony Romano, plaintiffs presented sufficient evidence to support their claims that there were additional separate entities who might be responsible for plaintiffs' injuries. American Home Products, through subsidiaries, employed Anthony Romano as the plant manager. Anthony Romano reported directly to Richard Hill who worked for Whitehall Laboratories Division of American Home Products, an entity legally separate from the plaintiffs' employer, Whitehall Laboratories, Inc. Therefore, American Home Products had at least some supervisory responsibility at the site of the explosion. Furthermore, American Home Products and Whitehall officials allegedly concealed the fact that destruction of hair spray

cans had previously caused an explosion at another American Home Products facility. Accordingly, an adequate basis existed for adding American Home Products, Inc. as a party in this action and for asserting a claim for fraudulent concealment of information. *City Check Cashing v. Nat. St. Bk.*, 244 *N.J.Super.* 304, 308–309, 582 *A.*2d 809 (App.Div.), *certif. denied,* 122 *N.J.* 389, 585 *A.*2d 391 (1990); *Burrell v. Quaranta,* 259 *N.J.Super.* 243, 612 *A.*2d 379 (App.Div.1992).

In denying the motions to amend, the trial court was skeptical whether the causes of action set forth in the proposed amended complaint "were supported in any way by any of the materials that plaintiff[s] had supplied to the Court." The trial court was also concerned because the matter was "approaching three years old." Although the decision is discretionary with the trial judge, enough evidence was presented by plaintiffs to put in issue whether Anthony Romano and Richard Hill were employees of a separate corporate subsidiary of American Home Products, Inc. If, in fact, the plant managers or safety personnel were employees of a separate corporate subsidiary of American Home Products, then they are not protected by the workers' compensation bar to suits against co-employees. The same is true for Romano's and Hill's respective employers.

The request was made before a trial date was set and immediately after the information became available to plaintiffs as a result of depositions. This is the purpose of discovery. If the very last deposition on the last day permitted for discovery disclosed a new defendant or a new claim, time should normally be given to pursue the claim. It certainly is not plaintiffs' fault that a late witness, as opposed to an early one, disclosed the particular information. Whitehall claims that the appeal is late because it was from a motion for reconsideration. Such motions to amend should generally be granted even if the ultimate merits of the amendment are uncertain.

■ Objection to the filing of an amended complaint on the ground that it fails to state a cause of action should be determined

by the same standard applicable to a motion to dismiss under *R.* 4:6–2(e). *Maxim Sewerage v. Monmouth Ridings,* 273 *N.J.Super.* 84, 90, 640 *A.*2d 1216 (Law Div.1993). "This requires treating all the allegations of the pleading as true, and considering only whether those allegations are legally sufficient to establish the necessary elements of the claimed cause of action." *Ibid.* (citing *Banks v. Wolk,* 918 *F.*2d 418 (3d Cir.1990)); *see also Printing Mart–Morristown v. Sharp Electronics,* 116 *N.J.* 739, 746, 563 *A.*2d 31 (1989).

Plaintiffs may or may not have a valid cause of action predicated upon the third amended complaint, but plaintiffs should at least be permitted to assert the cause of action. After all the proofs are obtained, it may well be determined that plaintiffs' third amended complaint cannot withstand a motion for summary judgment. Nevertheless, the trial court should have granted the motion to permit the filing of the third amended complaint.

Notably, the granting of the motion would not prevent the new defendants from asserting the statute of limitations, *N.J.S.A.* 2A:14–2, arguing that the fictitious defendant rule, *R.* 4:26–4, was not complied with for whatever reason, including failure to proceed to substitute these new defendants with due diligence. *See Viviano v. CBS, Inc.,* 101 *N.J.* 538, 503 *A.*2d 296 (1986); *DiMura v. Knapik,* 277 *N.J.Super.* 156, 649 *A.*2d 111 (App.Div.1994); *Cardona v. Data Systems Computer,* 261 *N.J.Super.* 232, 618 *A.*2d 864 (App.Div.1992); *Younger v. Kracke,* 236 *N.J.Super.* 595, 566 *A.*2d 581 (Law Div.1989). We express no opinion regarding this issue.

We affirm the decision of the trial court as to: (1) the applicability of the intentional act exception; (2) the intentional spoliation of evidence; and (3) the denial of the motion to compel production of defendant Whitehall's employee interview summaries. We reverse the trial court's denial of the plaintiffs' motion to file a third amended complaint and remand for further proceedings consistent with this opinion.