[*AVR I,* 294 *N.J.Super.* at 299–300, 683 *A* 2d 235 (emphasis added).]

Since *N.J.S.A.* 54:51A–8, as interpreted in *AVR I,* permitted the assessor to challenge the taxpayer's Freeze Act motion, we conclude the narrow view of the Tax Court deprived defendant of an opportunity to prove at a plenary hearing the change in the value of plaintiff's property occurring after the assessment date of October 1, 1994.

Reversed and remanded for further proceeding. We do not retain jurisdiction.

720 A.2d 438

LEORA MABEE, PLAINTIFF v. BORDEN, INC., FIGGIE INTERNA-TIONAL, FIGGIE INTERNATIONAL, INC., FIGGIE PACKING SYSTEMS, INC., GEORGE J. MEYER MANUFACTURING, CO., INC., MEYER WORLD PACKAGING MACHINERY, INC., AL-PHA PACKING EQUIPMENT, INC., DEF CO., INC., R. PALMI-ERI ELECTRICAL CONTRACTORS, INC., OF LANDISVILLE, NJ, SAWYER ELECTRICAL CO., OF WILDWOOD, NJ, BERNAL MECHANICAL CONTRACTORS, INC., OF VINELAND, NJ, CARLSON ASSOCIATES, INC., OF MASSACHUSETTS, CARL-SON MANAGEMENT, INC., OF MASSACHUSETTS, CARLSON PROCESSING, INC., OF MASSACHUSETTS, CARLSON–MID–ATLANTIC, INC., OF PENNSYLVANIA, CARLSON HOLDINGS CORPORATION, SAE AMERICA INC. OF BETHESDA, MARY-LAND AND SAE AMERICA MID–ATLANTIC, INC. OF HORS-HAM, PENNSYLVANIA, JOHN DOE, MARY DOE, ABC PART-NERSHIPS AND XYZ CORPORATIONS, DEFENDANTS.

Superior Court of New Jersey
Law Division
Atlantic County

Decided July 23, 1997.

*Paul R. D'Amato,* co-counsel, for plaintiff (*Paul R. D'Amato, P.C.,* attorneys; Donna Lee Vitale, on the Brief).

*Kenneth D. Mackler,* co-counsel, for plaintiff (*Goldenberg, Mackler & Sayegh,* attorneys).

*Michael Huber,* for defendant Borden Clam Products, Inc. (*Freeman, Barton & Huber,* attorneys).

*Martin G. Picillo,* for defendants Figgie International, Figgie Packaging Systems, George J. Meyer Manufacturing Co., Meyer World Packaging Machinery, Alpha Packing Equipment (*Picillo & Caruso,* attorneys).

*Donald D. Davidson,* for defendants Carlson Associates, Inc., Carlson Management, Inc., Carlson Process Company, Inc., Carlson Mid–Atlantic, Inc., Carlson Holdings Corp., SAE America, Inc., SAE–American Mid–Atlantic, Inc. (*Hoagland, Longo, Moran, Dunst & Doukas,* attorneys).

PREVITI, J.S.C.

The plaintiff, Leora Mabee, filed this suit against her employer Borden Clam Products, Inc. (Borden) as a result of an injury which she sustained during the course of her employment on October 1, 1991. Plaintiff alleges that this suit is not precluded by virtue of the exclusivity of the New Jersey Worker's Compensation Act, *N.J.S.A.* 34:15–8, because Borden's conduct fell within the "intentional wrong" provision of the Act. Plaintiff moves for an entry of Judgment of liability against defendant Borden and, alternatively, seeks an Order striking Borden's defense of the Workers Compensation bar. Defendant Borden moves for summary judgment dismissing plaintiff's Complaint on the grounds that plaintiff's proofs fail to establish that Borden's conduct rose to the level of an intentional wrong. Both parties agree that there is no issue of material fact in this case for purposes of these Motions.

At the time of the accident, the plaintiff was 19 years of age and had been employed by the defendant Borden since February, 1991, originally working in the clam shucking department until approximately April or May, 1991, at which time she commenced work in the labeling department in which was located the machine in question which was a machine which automatically pasted labels on bottles identified as an Alpha Labeler. For a period of time prior to the day of the accident, plaintiff operated a Krone's Labeler machine. At the time of the accident, plaintiff was operating the Alpha Labeler which was manufactured by the defendant Figgie International, Inc. The Alpha Labeler had been purchased by the defendant Borden in 1989 for use in their Pine Point, Maine plant but was transferred to their Cape May County plant when their Maine operation was shut down. On June 29, 1990, fifteen months prior to plaintiff's accident, a Borden employee, Mike Paskewicz, while operating the machine in question, sustained a severe crush injury to his hand when attempting to clean its rollers of excess glue while the machine was in operation. In order to prevent a future similar injury, Borden bolted a steel "V" guard on the machine which was designed to prevent an operator's hand from being pulled into the rollers while the machine was in operation. Additionally, when the machine arrived at the Cape May County plant, representatives of George Myers, Inc., a subsidiary of Figgie International, Inc., installed a plexiglass safety shield around the machine, a shield which the manufacturer had made available to users in 1989 but which was never obtained by Borden.

Unfortunately, prior to plaintiff's accident, Borden employees had unbolted the V guard (a guard which all agree would have prevented this accident) a number of months prior to the plaintiff's accident. Borden also installed a key bypass switch which would deactivate the plexiglass shield so that the machine could be operated with the safety shield doors open and the moving parts accessible to the operator thus effectively nullifying this safety device.

The plaintiff had never operated similar machinery prior to her employment with the defendant. Despite the existence of an orientation program for their employees consisting in part of formal training on machinery, the plaintiff was never enrolled in that program and never received formal instruction on the Alpha machine; she receiving only brief instruction from a coworker and having an opportunity to observe the machine in operation for a very limited period of time shortly before the accident. At the time of the accident, the plaintiff was filling in for the regular operator of the Alpha Labeler and had worked one full shift operating the machine without incident. On October 1, 1991, only the second shift on which plaintiff operated the machine, she cleaned excess glue from the rollers on the machine on one occasion, while it was in operation, without problem; however, excess glue continued to accumulate. Testimony revealed that the machine had not been operating properly for a lengthy period of time before this accident. Plaintiff again attempted to remove the glue while the machine was operating when her hand was suddenly drawn into the rollers causing a crush injury to her hand which has resulted in eight operations and severe permanent injury.

All parties agree that plaintiff's training on the Alpha Labeler was insufficient and further agree that cleaning the machine while it was in operation was dangerous and could cause serious personal injury.

Depositions of Borden representatives revealed that the bypass key switch was originally installed for maintenance purposes at the request of maintenance mechanics who desired to work on the machine while it was running. Some employees, including plaintiff, were instructed not to clean the machine while it was in operation; however, plaintiff also received contradictory instructions, being told by other Borden personnel that she should do so. Borden representatives further testified that the key for the bypass was left in the machine so that the operators could gain access while it was in operation and that the key bypass switch was installed not only for maintenance purposes but also for

purposes of cleaning excess glue from the rollers while the machine was in operation in order to avoid having to shut down the production line and thus delay productivity. Finally, there was testimony that the purpose of the key bypass switched from a maintenance purpose to an ongoing operational use; the bypass of the safety shield being utilized 98% of the time. The plaintiff was instructed by her co-employees in the manner in which the labeling rollers were to be cleaned during operation; the cleaning of the machine while it was being operated being encouraged because any shutdown could cause a fifteen to twenty minute cessation of production, something which was frowned upon since productivity, which had been suffering because of various problems at the plant, was of importance. Mark Presutti, Borden's personnel and safety manager, testified that he was not aware of the installation of the key bypass switch and further said that there was no need for a bypass key on a machine that would have the effect of defeating its safety device.

Plaintiff contends that the employer's conduct falls within the "intentional wrong" exception to the exclusivity of the Workers Compensation Act because the conduct of the employer in removing two safety devices that were installed after an identical accident created a "substantial certainty" or "virtual certainty" of injury to operators of the machine. Plaintiff points out that the substantial certainty test became the law of the State of New Jersey in 1985 when our Supreme Court adopted that concept in the case of *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 501 *A.*2d 505 (1985). That case involved a claim by employees that their employer intentionally exposed them to asbestos during the course of their employment and deliberately concealed from them the risks posed. The Court engaged in a lengthy analysis of the "intentional wrong" exclusion of the Workers Compensation Act and expressed a concern that if " 'the intentional wrong' exclusion is interpreted too broadly, this single exception would swallow up the entire 'exclusivity' provision of the Act ...." and that "The essential question therefore becomes what level of risk

exposure is so egregious as to constitute an 'intentional wrong'."
*Id.* at 177, 501 *A*.2d 505.

As defendant has pointed out, the *Millison* Court dismissed that portion of the Complaint predicated on the employer's conduct in deliberately exposing its employees to asbestos with full knowledge of the risks associated therewith. The Court, however, permitted the case to go forward under the "intentional act" exclusion on the claim that defendant's management personnel and its medical staff knew of the dangers of asbestos exposure, had a duty to inform its employees but nonetheless conspired to intentionally conceal from them all information concerning the health hazards posed by asbestos.

Plaintiff argues that the law involving the "intentional act" exclusion to the Compensation Act has been evolving nationwide to permit a relaxing of this exclusion to work-place injuries especially as it relates to an employer's failure to install or remove safety devices from machinery. Plaintiff has directed the court's attention to several sister jurisdictions which have adopted statutes equating the removal of, or the bypassing of, safety features by the employer as creating a rebuttable presumption of an intentional tort by the employer.

Plaintiff lists a series of New Jersey cases as well as Federal District Court cases interpreting New Jersey law which she contends clearly reflect the less stringent direction in which our law is headed regarding employer's conduct *vis-a-vis* the "intentional wrong" exclusion. *Stephenson v. R.A. Jones & Co.,* 103 *N.J.* 194, 510 *A*.2d 1161 (1986) involved a failure of an employer to install a guard allegedly sent it by the manufacturer of machinery and additionally a failure to provide adequate warnings to its employees. The case involved the right of the manufacturer to obtain contribution or indemnification from the employer. The majority of the Supreme Court found the claim barred by the exclusivity of the Workers Compensation Statute. Plaintiff points out that the Court noted "the argument that the dissent espouses, that the employer should indemnify the manufacturer of a defec-

tive machine that injures an employee when an employer persistently frustrates the manufacturer's efforts to correct a defect is not before us." *Id.* at 200, 510 *A.*2d 1161. The plaintiff argues that the decision would have been otherwise had this been the essential issue in the case. Plaintiff then refers to Justice Stein's dissent wherein the Justice wrote, "It is difficult to conceive that the legislative grant of Workers Compensation immunity was ever intended to protect from a manufacturer's indemnity claim an employer who prevented the manufacturer from repairing a defective machine." *Id.* at 217, 510 *A.*2d 1161. In *Seeley v. Cincinnati Shaper Co., Ltd.* 256 *N.J.Super.* 1, 606 *A.*2d 378 (App.Div.1992), the plaintiff was injured while operating a press brake in the course of his employment. When the employer purchased the machine there was no point of operation guard so the employer contacted the manufacturer who sent information regarding safety issues and offered to assist the employer in training its employees. Unfortunately, plaintiff was given only minimal instructions on the operation of the machine just prior to the accident. Plaintiff references Judge Dreier's footnote criticizing the state of the law:

By way of editorial comment we see that these problems so often arise out of a Workers Compensation system that provides relatively inadequate recovery even when the employer's negligence is so extensive that it borders on wanton conduct. Provided it falls short of an "intentional wrong," the employee has no remedy against the employer apart from Workers Compensation. *N.J.S.A.* 34:15–8. So many of these costly suits against equipment manufacturers could be forestalled if either the Workers Compensation remedy were more realistic, the tort law compensation were more circumscribed, or if the common-law suit exception were expanded to permit indemnification claims against an employer by a third party which is found liable for less than some fixed percentage of liability.

*Id.* at 10, 11, 606 *A.*2d 378.

Plaintiff also cites *Calderon v. Bollegraaf,* 285 *N.J.Super.* 623, 667 *A.*2d 1111 (App.Div.1995) involving warning issues and the heeding presumption in the context of an employee who sustains serious injury when the employer removed a safety gate from the machine he was operating. At the conclusion of the court's decision, Judge Dreier in dicta states:

Although the theory was not propounded by the plaintiff the facts of this case might also have raised the issue of whether an employer's removal of a safety

device rises to the level of an intentional wrong thereby triggering the statutory exception to the Workers Compensation Act in *N.J.S.A.* 34:15–8. Severe inequities are visited upon workers by the actions of their employers in removing, disconnecting, refusing to install, or otherwise thwarting safety devices that are provided to protect the users of industrial machinery. Such employees are generally left to the inadequate remedies of Workers Compensation, virtually sacrificed on the order of production quotas with no downside risk to the employer. We cannot here pass upon such a claim but we could envision liability on the part of the corporation whose management personnel or other employees have removed safety devices so that the risk is raised to such a high level that it is practically certain that some employees would be injured. (Citing *Millison, supra*) ... We can only suggest that, in the appropriate case, facts such as those in the case before us might be placed before a jury under a thesis that the removal of a safety device constitutes an intentional wrong when the employer knows there is a substantial certainty that a worker will be severely injured.

Plaintiffs argue that this comment by Judge Dreier, although dicta, is a strong indicator of where our Appellate Courts may be headed on this issue of an employer's removal of safety devices.

Finally, plaintiff cites *Byrnes v. Ebasco Constructors, Inc., et al* App.Div. A–5568–95T1 (May 7, 1994) involving the placement of toxins by a worker in his co-worker's cigarette which act was observed by the employer's safety officer. The Appellate Division permitted the case to go forwarded under the "substantial certainty" doctrine.

As part of the evolving law, plaintiff references three Federal District Court cases for the District of New Jersey decided since *Millison. Cremen v. Harrah's Marina Hotel Casino,* 680 *F.Supp.* 150 (D.N.J.1988) involved an employee's claims of battery by a co-employee and the intentional infliction of emotional distress. Chief Judge Gerry commented that in *Millison, supra,* "the Court altered the standard for determining when employer conduct constitutes an 'intentional wrong'. The new approach dissolved the necessity of proving that the employer possessed a subjective intention to inflict deliberate injury. In its place, the Court substituted a *less stringent requirement* (underlining mine) of showing that an employer's actions were 'substantially certain' to cause the complained of harm." *Id.* at 157. Judge Gerry concluded that accepting as true the plaintiff's allegations "the incidents as averred are 'sufficiently flagrant' so as to constitute intentional

wrongs", *Id.* at 158, thus enabling plaintiff to pursue her action against the employer.

In *Clement v. Consolidated Rail Corporation, et al.,* 1990 WL 33148 (D.N.J.), Senior District Judge Clarkson S. Fisher also referred to *Millison,* stating that:

> The New Jersey Supreme Court reexamined the level of conduct which it considered sufficiently flagrant to constitute an "intentional wrong". Although the Court acknowledged that the statutory scheme [of the Workers Compensation Law] contemplates that as many work-related disability claims as possible be processed exclusively within the Act, it concluded that the "deliberate intention" standard did not conform with the philosophy embodied in the Act. Therefore the Court adopted a *broader approach* [underlining mine] which eliminated the requirement that plaintiffs must show that their employers subjectively intended to harm them. Instead the Court substituted the *less stringent* [underlining mine] requirement of showing that an employer's actions were "substantially certain" to cause the complained of harm.

*Id.* at 4.

Finally plaintiff points to Judge Irenas' decision in *Oquendo v. Bettcher Industries, Inc.,* 939 *F.Supp.* 357 (D.N.J.1996) a case involving the temporary removal of a safety device, the lack of which device led to plaintiff employee's injury. Judge Irenas commented upon Judge Dreier's Opinion in *Calderon,* stating that "in an appropriate case" the removal of safety equipment by an employer might constitute an intentional wrong as articulated by *Millison, Id.* at 360. Judge Irenas granted summary judgment to defendant employer finding that:

> This is not a case in which an employer permanently removes or disables safety features for the express purpose of speeding up production, a situation possibly foreseen in *Calderon.* Rather Quality operated a meat press for many years with a safety guard and removed it temporarily for cleaning and repair only when directed to do so by the Department of Agriculture.

*Id.* at 360, 361.

Obviously, the *Oquendo* fact pattern is certainly distinguishable from the one before the Court.

Defendant Borden argues that the aforementioned federal cases have no relevance to this case, arguing that any rationale relying on Judge Dreier's comments are misplaced, the comments are "merely dicta" and ignore the holding in *Millison.* Defendant asserts that the *Millison* Court approved and expressly reaffirm-

ed the validity of prior decisions such as *Bryan v. Jeffers,* 103 *N.J.Super.* 522, 248 *A.2d* 129 (App.Div. 1968) and *Arcell v. Ashland Chemical Company,* 152 *N.J.Super.* 471, 495–96, 378 *A.*2d 53 (Law Div.1977) arguing that courts in those cases required that one must show a deliberate intention by the employer to injure the employee. Defendant points to three recent Appellate Division decisions as reenforcing his argument, the first of which *Bustamante v. Tuliano,* 248 *N.J.Super.* 492, 591 *A.*2d 694 (App.Div. 1991) *cert. denied* 126 *N.J.* 385, 599 *A.*2d 162 (1991), being a case wherein an employee shot his co-employee in the eye with a wax bullet during a police training exercise. Police Officer Tuliano had intentionally fired the pistol at plaintiff's face in order to "sting him" with a wax bullet; however, the bullet struck and injured plaintiff's eye. Defendant points out that the Appellate Division found the intent to "sting" fell short of the intent to injure as a matter of law and, therefore, that the "intentional wrong" exception was not triggered. *New Jersey Manufacturer's Insurance Company v. Joseph Oat Corporation,* 287 *N.J.Super.* 190, 670 *A.*2d 1071 (App.Div.1995) involved a Workers Compensation and Employer's Liability Insurance Coverage Appeal arising from the deaths of two employees of the defendant insured Joseph Oat Corporation. A Complaint was couched in language designed to survive the exclusivity of the Workers Compensation Act by alleging "intentional wrong". The defendant argues that the Appellate Division found that the Supreme Court in *Millison* did not depart from *Bryan* and that a deliberate intent to injure the employee was still necessary quoting:

rather that [Millison] did no more than explain that a deliberate attempt to injure can be proved not only by evidence of actual subjective intent to injure, but also by facts without which an actor cannot be said to intend the harm that his act produces ... there are not, then, two discreet categories of conduct which will satisfy the requirements of an "intentional wrong" ... both subjective intent and substantial certainty of harm are expressive of the same standard, i.e. deliberate intent to harm.

*Id.* at 197, 501 *A.*2d 505.

Defendant asserts that anything short of a deliberate intent to injure *the* employee will not escape the exclusivity of the Workers

Compensation Statute and that in the case at bar, "the bottom line is that the injuries were caused by a work-related accident and not a deliberate attempt by the employer to injure Leora Mabee." *Borden* brief at p. 43. Defendant argues that the trial court cannot create exceptions to an established rule of law based upon dicta in an Appellate Division case (*Calderon*) especially where contrary authority exists in a Supreme Court case (*Millison*) and later Appellate Division decisions. Defendant further asserts that to follow Judge Dreier's dictum would permit a finding of intent to injure where there is no deliberate intent by the employer to injure the employee, a legal position which defendant contends is contrary to our law. Finally Borden claims that Judge Dreier's theory that if risk of injury to an employee is practically certain liability would follow is incorrect and in direct conflict with *Millison*.

Defendant argues that a recently decided Appellate Division case, *Estrada v. Hendricksaw Corp.*, 302 *N.J.Super.* 262, 695 *A.*2d 323 (App.Div. 1997) supports its position. In *Estrada* a safety guard was removed from a machine, and not replaced, by an employee whose employment with the common employer terminated four months prior to plaintiff employee's hire. The issue presented, as articulated by Judge Stern, was "whether the injured worker and responsible co-employee must both have been working for the common employer at the time of the act or omission giving rise to plaintiff's injury." *Id.* at 264. Plaintiff's counsel argued that the exclusivity of the Compensation Act did not apply since suit was being instituted against a co-employee who was not employed by the common employer at the time of the plaintiff's accident. The court did not accept plaintiff's legal argument, dismissed the case simply stating the general rule with which I have no disagreement, that: "as a result a co-employee of an injured worker entitled to worker's Compensation is ordinarily immune from common law or other actions by the injured worker." ... "The fellow worker's employment need not be simultaneous for purposes of the immunity." *Id.* at 262, 266. In my opinion, the *Estrada* case has no impact on my decision as the

issue is not really on point with the issue with which we are concerned.

Finally, defendant refers to the recently decided case of *Marinelli v. Mitts & Merrill, et al.*, 303 *N.J.Super.* 61, 696 *A.2d* 55 (1997). In that case three plaintiffs brought a direct claim against their employer, Whitehall Laboratories, asserting an intentional wrong under *N.J.S.A.* 34:15-8. The facts revealed that they were injured when an explosion occurred while they were placing numerous cans of hair spray into a compactor. Discovery revealed that there had been a similar explosion under similar circumstances at another plant operated by a parent company of Whitehall Laboratories. Discovery revealed that, prior to the accident, the employer knew that if too many cans were punctured in an area without proper ventilation, harmful vapors would be released which were volatile and flammable as well as toxic, that the employer had received numerous prior citations from OSHA because of its improper actions relating to the shredding of hair spray cans and that an investigation disclosed five OSHA violations against the employer arising from the accident. Summary Judgment in favor of the employer was affirmed by the Appellate Division, Judge Dreier sitting on the panel deciding the case. Defendant argues that the case is similar to ours in that there was a prior similar accident, the employer was aware of the dangers presented by the compacting of these containers but nonetheless disregarded those facts in ordering the employees to perform that job function. Defendant points out that the court commented "... it merely presents a workplace injury caused by either gross negligence or an abysmal lack of concern for the safety of employees." *Id.* at 72, and further quoted from *Millison* which quoted Professor Larson:

> ... this still falls short of the kind of actual intention to injure that robs the injury of accidental character ... but in any normal use of the words it cannot be said, if such an injury does happen, that this was a deliberate infliction of harm comparable to an intentional left jab to the chin.

Defendant makes a compelling argument; however, I would point out that the court thereafter referred to the *Calderon* decision,

quoted Judge Dreier's dicta verbatim and remarked, "the actions of Whitehall in this case fall far short of those in *Calderon* and are clearly outside of the standards established in *Millison*. Certainly there was no removal of a safety device or other conduct which creates a substantial certainty that a worker will be severely injured." *Id.* at 73. Obviously, the Appellate Division drew a rather sharp distinction between the fact pattern in *Marinelli* and a factual scenario more akin to *Calderon* and the subject case regarding the removal of a safety device. In my opinion, this decision is a strong indicator of the direction in which the Appellate Division is going and suggests that an employer's knowing removal of a safety device can be considered a deliberate act under the terms of the Statute.

■ My review of the authorities cited by both sides leads me to concur with the position taken by plaintiff. I am satisfied that the developing law recognizes the unfairness of depriving an employee of his common law remedies where the conduct of his employer rises to that degree of egregiousness that would cause a reasonable person to conclude that it is "practically certain", "substantially certain", or "virtually certain" (all phrases that appear in recent case law) that some employee would be injured thereby. I am also satisfied that plaintiff need only establish that "some" employee would be injured and not that a deliberate intent be made by the employer to harm the particular plaintiff herself.

■ Case law makes it abundantly clear that the employer's conduct must rise to a very high level of risk of danger to the employee; higher than mere negligence, gross negligence, recklessness, a "strong probability" of risk and even higher than an "abysmal lack of concern for the safety of employees". *Marinelli, supra,* at 72. Our Supreme Court's concern regarding the danger of reducing the intentional tort exclusion to a meaningless phrase is very obvious; however, Justice Clifford acknowledged that: *"Although we are certain that the legislature could not have intended that the system of Workers Compensation would insulate actors from liability outside the boundaries of the Act for all*

*willful and flagrant misconduct short of deliberate assault and battery* (underlining mine) we are equally sure that the statutory scheme contemplates that as many work-related disability claims as possible be processed exclusively within the Act." *Id.* 101 *N.J.* at 177. Justice Clifford went on to provide the following guideline:

> There is another significant component to the level of risk exposure that will satisfy the "intentional wrong" exception. Courts must examine not only the conduct of the employer but also the context in which that conduct takes place: may the resulting injury or disease and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act?
>
> *Id.* 101 *N.J.* at 178, 179.

With respect to the standard to be applied, as pointed out heretofore, two distinguished federal jurists, Chief Judge Gerry and Senior Judge Clarkson, in recent decisions referred to the "less stringent" burden established by our Supreme Court in *Millison* of "substantial certainty". I agree with their observations.

The defendant Borden has cautioned that it is not within the province of the trial court to make new law. I do not view my decision herein as establishing new law but rather as applying the facts of this case to the law as it has evolved over the last several years. Examining Borden's conduct in the factual context in which that conduct takes place, namely an employee sustaining a crush injury to his hand while attempting to clean glue from the rollers of an operating machine; an employer who places not one but two safety guards on the machine to prevent a recurrence of such an injury; an employer who, because of production concerns, then removes one guard and renders the other ineffectual by virtual of the bypass key and finally the occurrence of an identical accident with an identical injury to another employee (a teenaged, inadequately-trained, unsupervised one at that) who was instructed to clean the machine while it was in operation. Can I conclude as a matter of law, both parties agreeing that the material facts are not in dispute, that there was a "virtual certainty" or "substan-

tial certainty" that the second accident would occur? That question must be answered with a resounding "yes". The elimination of the two safety devices in this factual scenario not only created a situation where "the risk is raised to such a high level that it is practically certain that some employee would be injured." *Calderon, supra,* at 637, 667 *A.*2d 1111 but created a situation where the plaintiff's injury was absolutely inevitable, the question not being "if" another accident would occur while the Alpha Labeler was being operated but "when" it would occur. A situation was created by Borden wherein Leora Mabee indeed was " . . . virtually sacrificed on the altar of production quotas . . ." *Id.* at 636, 667 *A.*2d 1111.

For the aforementioned reasons, Borden's motion for summary judgment predicated on the exclusivity of the Workers Compensation bar is DENIED. The plaintiff's motion to enter a judgment of liability against Borden as a matter of law is GRANTED.