703 A.2d 364

SHARON MCGOVERN, PLAINTIFF-APPELLANT, v. RESORTS IN-
TERNATIONAL HOTEL, INC.; RESORTS INTERNATIONAL,
INC.; RESORTS INTERNATIONAL INC. OF NEW JERSEY;
RESORTS INTERNATIONAL FINANCING, INC.; INTER–TEL,
INC.; WILLIAM COPELAND; AND JOHN DOES (# 1–45),
JOINTLY, SEVERALLY AND/OR IN THE ALTERNATIVE, DE-
FENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1997—Decided December 15, 1997.

Before Judges SHEBELL, D'ANNUNZIO and A.A.
RODRÍGUEZ.

*David Jacoby* argued the cause for appellant (*Tomar, Simonoff, Adourian, O'Brien, Kaplan, Jacoby & Graziano,* attorneys; *Joseph J. Lisa, III,* on the brief).

*David Lieberman* argued the cause for respondents (*Horn, Goldberg, Gorny, Plackter, Weiss & Perskie,* attorneys; *Michael S. Affanato,* on the brief).

The opinion of the court was delivered by

SHEBELL, P.J.A.D.

On February 21, 1994, plaintiff, Sharon McGovern, was employed as a Security Supervisor by defendant, Resorts International Hotel, Inc. ("Resorts"), when at approximately 10:30 a.m. she was shot attempting to prevent the robbery of money on a cart she was escorting across the public gaming floor to an armored car. Resorts' money transfer procedure was as follows:

[t]he supervisor would enter the [money] cage and then in company with the cage supervisor bring the deposit out to the main floor where it would be escorted out into the armored car bay.

The safety of this procedure came into question subsequent to Resorts' change over to a twenty-four (24) hour casino operation. Before the change, the gaming money would be transferred during closing hours. After the change, members of the public were present in the area where the money was transferred. Despite complaints from Resorts personnel over the money transfer procedure, Resorts continued to order its security personnel to perform this operation in the presence of the public.

On February 5, 1996, plaintiff filed a Law Division action against Resorts and the other named defendants, alleging that

with full knowledge of the consequences and dangers inherent in the security procedures, devices and methods they instituted for the transportation of Casino money/gambling revenue from Casino collection areas, did by design, resolve, determination and thereby, with intent and/or substantial certainty expose its' [sic] employees, including Plaintiff, to a known hazardous condition and life threatening situations, and acted with the full knowledge, intent and substantial certainty that an employee, like plaintiff, Sharon McGovern, would be severely injured.

Plaintiff thereby contended that Resorts' conduct fell within the "intentional wrong" exception to the exclusive remedy provision of the New Jersey Workers Compensation Act, *N.J.S.A.* 34:15–8, which provides that:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong.*
>
> [*N.J.S.A.* 34:15–8 (emphasis added).]

In her June 27, 1996 deposition, plaintiff stated that she expressed and also heard complaints that Resorts' money transfer procedure was "an accident waiting to happen." In his October 1, 1996 deposition, Director of Resorts' Security, Marion Howard, stated that he expressed concerns to Executive Vice President of Finance, and later, Chief Operating Officer of Resorts, John Spina, regarding the way Resorts handled their armored car transfer, and how urgent he felt it was to change the procedures.

Howard believed there was a "high probability" that an incident would take place if Resorts continued the procedure without modification. He met with Spina to discuss his concerns and informed Spina that Resorts was one of only two remaining casinos that handled the money transfer in this fashion. Howard recommended to the Division of Gaming Enforcement that Resorts' procedures be changed, and informed Spina of his recommendation. It appears that the $50,000 expense of building a secured money-route was the reason the procedure was not changed. Members of the security staff had discussed the fact that it was only a matter of time before someone would be injured or possibly killed because of the procedure.

Resorts moved for summary judgment and on November 22, 1996, argument was held on the motion. Plaintiff argued that the statute's language is construed to encompass not only deliberate conduct but also instances where injury is a substantial or virtual certainty, citing *Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 501 *A.2d* 505 (1985). Plaintiff's counsel stated that Resorts was aware of a "substantial likelihood of injury," that

Resorts knew of the "high probability" for this type of incident, and that "the reason that Resorts chose not to give a safe passage for the transport of this money was [for] one reason and it was one reason only and it was the most base of reasons: it was money."

After reviewing the *Millison* decision and *Bustamante v. Tuliano*, 248 *N.J.Super.* 492, 591 *A.2d* 694 (App.Div.), *certif. denied*, 126 *N.J.* 385, 599 *A.2d* 162 (1991), the motion judge stated:

this is not a case that is subject to the exception under the Worker's Compensation Act. Even drawing all inferences in favor of the plaintiff and accepting as true that ... Resorts knew and appreciated the risk a robbery existed for its security officers during the transport of funds across the floor and that they believed it was only a matter of time until someone got hurt, perhaps that is reckless, perhaps that is negligent, but it's not intentional. . . .

Although the risk that a security officer would be injured while transporting the money from the cashier's box did blossom into a reality in this case, I don't believe that the actions of Resorts were the type of intentional actions for which the Legislature intended to allow circumvention of the compensation statute and the avoidance of that exclusive remedy. . . . There was a strong probability, that is different from substantial certainty. That is not a virtual certainty. . . .

Accordingly, an order was entered granting summary judgment in favor of defendants. On January 10, 1997, pursuant to *R.* 4:37–1(a), plaintiff filed a notice of voluntary dismissal without prejudice as to the claims against the non-Resorts defendants. Plaintiff appeals arguing that the trial court improperly granted summary judgment and denied her a forum in which to seek legal redress for her injuries.

*Brill v. Guardian Life Ins. Co.*, 142 *N.J.* 520, 666 *A.2d* 146 (1995) requires that the motion judge on summary judgment engage in an analytical process essentially the same as that necessary to rule on a motion for a directed verdict. *Brill, supra*, 142 *N.J.* at 536, 666 *A.2d* 146. The judge must decide whether

the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party ... If there exists a single unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of *Rule* 4:46–2.

[*Id.* at 540, 666 *A.2d* 146.]

Moreover, "when the evidence 'is so one sided that one party must prevail as a matter of law,' the trial court should not hesitate to grant summary judgment." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 *U.S.* 242, 252, 106 *S.Ct.* 2505, 2511, 91 *L.Ed.*2d 202, 212 (1986)).

■ In order to satisfy *N.J.S.A.* 34:15-8's definition of "intentional wrong," claimants are required to show a "deliberate intention to injure." *Millison, supra,* 101 *N.J.* at 170, 501 *A.*2d 505 (1985); *Bryan v. Jeffers,* 103 *N.J.Super.* 522, 523–24, 248 *A.*2d 129 (App.Div.1968) (holding that "the Legislature intended the words 'intentional wrong[ ]'. . . to have their commonly understood signification of deliberate intention" and not gross negligence or constructive intent), *certif. denied,* 53 *N.J.* 581, 252 *A.*2d 157 (1969).

■ Our Supreme Court pointed to two factors that further define the meaning of "deliberate intention to injure"; namely, conduct and context. *Millison, supra,* 101 *N.J.* at 178–79, 501 *A.*2d 505. For "conduct," the Court adopted a "substantial certainty" test, acknowledging

> that every undertaking, particularly certain business judgments, involve some risk, but that willful employer misconduct was not meant to go undeterred. The distinctions between negligence, recklessness, and intent are obviously matters of degree, albeit subtle ones. . . . In light of the legislative inclusion of occupational diseases within the coverage of the Compensation Act, however, the dividing line between negligent and reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the Act is not circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty.
>
> [*Millison, supra,* 101 *N.J.* at 178, 501 *A.*2d 505.]

There is only one level of intent sufficient to overcome the exclusivity of the Workers' Compensation Act, and "[b]oth subjective intent and substantial certainty of harm are expressive of the same standard, *i.e.* deliberate intent to harm." *N.J. Mfrs. Ins. v. Joseph Oat Corp.,* 287 *N.J.Super.* 190, 195–97, 670 *A.*2d 1071 (App.Div.1995).

The *Millison* Court viewed "context" as: "may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employ-

ment, or is it rather plainly beyond anything the legislature could have contemplated as entitling the employee to recover *only* under the Compensation Act?" *Id.* at 179, 501 *A.*2d 505.

Plaintiffs argue that a "court should be particularly hesitant in granting summary judgment where questions dealing with subjective elements such as intent, motivation and duress are involved." *Shanley & Fisher, P.C. v. Sisselman,* 215 *N.J.Super.* 200, 213, 521 *A.*2d 872 (App.Div.1987) (law firm's action against clients to recover for legal services rendered); *see also Costello v. Ocean County Observer,* 136 *N.J.* 594, 615, 643 *A.*2d 1012 (1994) ("issue of a defendant's state of mind does not readily lend itself to summary disposition"). Plaintiff also calls our attention to the Connecticut case of *Suarez v. Dickmont Plastics Corp.,* 229 *Conn.* 99, 639 *A.*2d 507, 512–13 (1994), holding that it is a jury question as to "whether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result." *Id.*

We are convinced that the motion judge properly applied the *Brill* standard. 142 *N.J.* at 540, 666 *A.*2d 146. The evidence presented viewed in the light most favorable to plaintiff is not sufficient to permit a reasonable factfinder to resolve the disputed issue in her favor. Viewing both conduct and context, there exists no evidence upon which to base a rational inference that plaintiff's employer had a "deliberate intention to injure." *Millison, supra,* 101 *N.J.* at 170, 178–79, 501 *A.*2d 505; *Marinelli v. Mitts & Merrill,* 303 *N.J.Super.* 61, 70–73, 696 *A.*2d 55 (App.Div.1997); *Bustamante, supra,* 248 *N.J.Super.* at 500, 591 *A.*2d 694.

We reject plaintiff's argument that the evidence demonstrates that Resorts acted with a deliberate intent to injure her and her co-workers. Even assuming that 1) Resorts' security team made recommendations and complaints to management concerning the moving of money from the cage to the armored vehicles; 2) that it was for cost reasons that Resorts failed to change the procedure;

and 3) that all of the facts surrounding the happening of the incident are uncontradicted, the facts do not rise to a level that would permit plaintiff to seek a remedy outside of the Workers Compensation Act.

The facts indicate negligence or, at most, recklessness on the part of Resorts, and not a deliberate intention to harm its employees. An employer's knowledge and appreciation of a significant risk does not constitute the requisite intent needed to circumvent the Workers' Compensation statute. *Millison, supra,* 101 *N.J.* at 178, 501 *A.*2d 505; *Marinelli, supra,* 303 *N.J.Super.* at 72, 696 *A.*2d 55. The *Millison* Court noted that the Workers' Compensation Act was not meant to be "circumvented simply because a known risk later blossoms into reality. We must demand a virtual certainty." *Millison, supra,* 101 *N.J.* at 178, 501 *A.*2d 505. The record will not support a finding that Resorts knew it was a "virtual certainty" that plaintiff would be injured in the manner that she was.

We take no position with respect to the dicta in *Calderon v. Machinenfabriek Bollegraaf Appingedam BV,* 285 *N.J.Super.* 623, 636–37, 667 *A.*2d 1111 (App.Div.1995), *certif. denied,* 144 *N.J.* 174, 675 *A.*2d 1122 (1996). We see no parallel to the conduct referred to in that case. Resorts did not intentionally remove any safety devices or procedures intended for the protection of its employees and the harm inflicted upon plaintiff was an illegal act of a third party.

Affirmed.