778 A.2d 511 (2001)
343 N.J. Super. 225
Heidi DeLANE, Individually and as Administratrix of the Estate of Michael DeLANE, Plaintiff-Respondent/Cross-Appellant, and
The Newark Firemen's Union, Plaintiff,
v.
The CITY OF NEWARK; Stanley Kossup and Bruce Paynter, Defendants-Appellants/Cross-Respondents, and
Public Service Electric and Gas Company, Defendant.
Superior Court of New Jersey, Appellate Division.
Submitted January 9, 2001.
Decided July 24, 2001.
*513 Michelle Hollar-Gregory, Corporate Counsel, attorney for appellants/cross-respondents (Hugh Gallagher, Assistant Corporate Counsel, on the brief; Mr. Gallagher and Susan S. Singer, Assistant Corporation Counsel, on the reply brief).
Lowenstein Sandler and Wright, Pindulic & Hamelsky, attorneys for respondent/cross-appellant *514 Heidi DeLane, as Administratrix of the Estate of Michael DeLane (Patrick J. Whalen and Kimberly Espinales, on the brief; Amy R. Bitterman, on the reply brief).
Purcell, Ries, Shannon, Mulcahy & O'Neill, Bedminster, attorneys for respondent Heidi DeLane, individually (Kevin Kovacs, on the brief).
Before Judges STERN, A.A. RODRÍGUEZ and FALL.
*512 The opinion of the court was delivered by RODRIGUEZ, A. A., J.A.D.
Three novel issues are presented in this appeal and cross appeal: (1) whether a workers' compensation lien, arising by operation of N.J.S.A. 34:15-40, attaches to the full amount of a wrongful death recovery from a third party or only to that portion of the recovery which is deemed "lost wages damages;" (2) whether the workers' compensation lien should attach to a survival action recovery from a third party when the injured worker did not file a claim petition nor receive any workers' compensation benefits; and (3) whether the "intentional wrong" exception to the exclusive remedy provision set forth by N.J.S.A. 34:15-8 applies to an employer whose past and present practices have recklessly exposed its employees to substantial risks of death or injury. We hold that the workers' compensation lien attaches to any amount recovered in a wrongful death action, but that it does not attach to the proceeds of a survival claim for pain and suffering when the injured employee had not filed a claim petition nor received any workers' compensation benefits. We also hold that the facts presented here do not implicate the "intentional wrong" exception.

I
The relevant facts are undisputed. Michael DeLane, a firefighter with the Newark Fire Department, died from electrocution while fighting a fire. He was thirty-three years old. A fellow firefighter, Juan Ramos, was also electrocuted while fighting the same fire. Fortunately, Ramos survived.
The events leading up to this accident can be summarized as follows. In the early morning hours of October 29, 1994, the Newark Fire Department responded to a fire at Chester Avenue in Newark. The firefighters were organized into four engine companies, two ladder truck companies and one rescue company. Captain Bruce Paynter was the commander of one of the ladder truck companies. Ramos, a probationary firefighter in Paynter's company, positioned an aerial ladder on the roof of the burning building between overhead primary electrical supply wires conveying 1,300 volts and secondary electrical supply wires conveying approximately 600 volts. The wires were six to twelve inches above and below the top of the ladder. Once in place, four firefighters, including Paynter and Ramos, climbed the ladder to cut ventilation holes in the roof. A power saw was brought atop the roof to cut the holes.
DeLane, a member of the rescue company, climbed the ladder to the roof to aid the others. Heavy fire and smoke bellowed from every opening of the building. The roof began to show signs of deterioration. Paynter ordered all firefighters off the roof. Ramos and DeLane were the first and second, respectively, to descend the ladder.
After Ramos had reached ground level, DeLane requested his assistance to remove the power saw from the roof. Ramos climbed the ladder again but stayed *515 below the level of the power lines. DeLane passed the saw to Ramos under the wires. While both men were holding the saw, it struck a primary wire. Ramos was electrocuted and became unconscious. DeLane was electrocuted but remained conscious. He called out for someone to help Ramos. He told a fellow firefighter, Ron Ballew, that his left side was numb. Ballew tried to crawl under the wires, but DeLane stopped him to prevent him, too, from coming in contact with the wires. Paynter called for assistance. Ramos was removed from the ladder. The injured DeLane slid towards the wire and came in contact with it a second time. He was pronounced dead at the hospital about one hour later.
DeLane's wife, Heidi DeLane, acting individually and as Administratrix of his Estate (plaintiff), and the Newark Firemen's Union sued the City of Newark, its fire department, its Fire Director and Fire Chief (Stanley Kossup), and Captain Paynter (collectively "the City"), as well as Public Service Electric and Gas (PSE & G). The complaint alleged several causes of action, including a claim for DeLane's pain and suffering prior to his death (the survival claim) and a claim for his wrongful death. Ramos and his wife also filed a lawsuit against the same defendants. The two lawsuits were consolidated.
The City answered and cross-claimed against the State of New Jersey and PSE & G. After a period of discovery, the City and its employees moved for summary judgment pursuant to the exclusive remedy provisions set by N.J.S.A. 34:15-8. The judge issued a written opinion granting summary judgment, dismissing all claims by plaintiff and Ramos against the City, its fire department, and its employees. The Ramos settled with the remaining defendants.
PSE & G offered plaintiff $500,000 to settle the claims against it. At the time of DeLane's death, his wife and his parents, Jude and Carmela DeLane, were economically dependent on him. As such, the DeLanes agreed to the following allocation of the $500,000 settlement. First, the amount of the settlement was split evenly between the survival and wrongful death claims. From the $250,000 settlement allocated to the survival claim, $110,000 would be paid to Heidi, $60,000 to the parents, and $80,000 to satisfy costs and attorney's fees. From the $250,000 settlement allocated to the wrongful death claim, $96,080 would be paid to Heidi, $75,200 to the Estate's attorney as costs and fees, $10,200 to the parents, $4,800 to the parents' attorney, and $63,720 to the City to satisfy, in full, its workers' compensation lien.[1] This allocation was based on a comprehensive study by Frank D. Tinari, Ph. D., an economist, which was submitted to the trial court. Dr. Tinari projected that the wrongful death damages sustained by the DeLanes totaled $1,438,166.
The DeLanes accepted the offer subject to two conditions: (1) the judge's approval of a limitation on the workers' compensation lien to $62,466, to be paid only from Heidi's share of the lost wages damages; and (2) any appellate reversal of the proposed allocation would void the entire settlement. The judge granted plaintiff's motion and approved the settlement against PSE & G, allocated the settlement as proposed by the DeLanes and ordered that the City's workers' compensation lien attach only to the amount of damages attributable *516 to lost wages payable to Heidi, not to exceed $62,466.
The City appeals contending that: (1) its lien attaches to all wrongful death damages and not just lost wages; and (2) its lien for dependency benefits should attach to the survival claim settlement. Plaintiff, as Administratrix of the Estate, cross-appeals contending that: (1) the judge erred in granting the City's motion for summary judgment because the judge misapplied the "substantial certainty" exception to the workers' compensation exclusive remedy provision; and (2) the City has waived any claim or defense as to the reasonableness of the allocation of the settlement funds.

II
The City first contends that its lien should attach to all of the DeLane's wrongful death recovery from PSE & G and not just to that allocated to lost wages. We agree.
Plaintiff contends that the workers' compensation lien should be limited to the amount of lost wages. Plaintiff argues that because she did not receive any workers' compensation benefits for the loss of DeLane's companionship and society, there is no double recovery for these damages in the PSE & G wrongful death settlement. Plaintiff offers no controlling authority for this argument.
The argument has some superficial appeal. However, upon closer analysis, we reject it. It is true that the intent of the workers' compensation lien provision is to avoid double recoveries which may occur when a beneficiary of workers' compensation benefits also receives, from a third party, damages that match those benefits. Frazier v. N.J. Mfr. Ins. Co., 142 N.J. 590, 597, 667 A.2d 670 (1995). However, there are other considerations. First, we note that damages for loss of companionship and society are really economic dependency damages. See Green v. Bittner, 85 N.J. 1, 424 A.2d 210 (1980). The measure of these sorts of damages is the monetary value of those services which the dead companion used to provide and for which the dependent must now pay. Id. at 11, 424 A.2d 210. Here, the workers' compensation dependency benefits paid to Heidi are, in part, to redress her monetary loss of DeLane's companionship and society.
Second, a wrongful death claim is a single claim, not a collection of separate causes of action. In DeFelice v. Beall, 274 N.J.Super. 592, 598, 644 A.2d 1136 (App. Div.), certif. denied, 138 N.J. 268, 649 A.2d 1288 (1994), we held that:
where one person is injured and dies from injuries sustained in an automobile accident, the loss of care, guidance, advice and services claims of the dependents are subsumed in a single action under the Wrongful Death Act, and are components of a single pecuniary loss claim. The claim of the administrator ad Prosequendum or the executor is subject to the per-person limit of the policy.

[Id. at 598, 644 A.2d 1136 (emphasis added).]
See also, McMullen v. Maryland Cas. Co., 127 N.J.Super. 231, 238, 317 A.2d 75 (App. Div.1974), aff'd, 67 N.J. 416, 341 A.2d 334 (1975) (stating that a recovery from wrongful death is one lump sum representing all economic losses, past and future).
Third, the language of N.J.S.A. 34:15-40 supports the conclusion that the entire wrongful death recovery is subject to the lien. N.J.S.A. 34:15-40 provides as follows in pertinent part:
Liability of third party
Where a third person is liable to the employee or his dependents for an *517 injury or death, the existence of a right of compensation from the employer or insurance carrier under this statute shall not operate as a bar to the action of the employee or his dependents, nor be regarded as establishing a measure of damage therein. In the event that the employee or his dependents shall recover and be paid from the said third person or his insurance carrier, any sum in release or in judgment on account of his or its liability to the injured employee or his dependents, the liability of the employer under this statute thereupon shall be only such as is hereinafter in this section provided....

[N.J.S.A. 34:15-40 (emphasis added).]
The language of the statute does not exempt any portion of the recovery from the lien. Rather, the lien attaches to "any sum" recovered from the third party. It is well-settled that if the language of a statute is clear on its face, the sole function of the court is enforce it according to its terms. Hubbard v. Reed, 168 N.J. 387, 392, 774 A.2d 495 (2001).
In Bello v. Comm'r, Dept. of Labor and Indus., 56 N.J. 41, 264 A.2d 222 (1970), the Supreme Court construed this statutory language. The Court considered whether the Two Percent Fund was entitled to reimbursement and credit out of a third party recovery by an injured worker. Id. at 43, 264 A.2d 222. Part of the damages in the third party recovery were for pain and suffering. The Supreme Court held that the Two Percent Fund was not limited to items which were identified as being compensable. Id. at 50, 264 A.2d 222. Rather, the lien should attach to the entire recovery. Id. at 50-51, 264 A.2d 222. The Court reasoned that the Legislature intended that the reimbursement be drawn from the entire third party recovery because of the use of the term "in any amount." Id. at 47, 264 A.2d 222. Otherwise, the Court concluded, the Legislature would have used more limiting language in describing the type of recovery to which a lien would attach. Ibid.
As such, the trial court was erroneous to limit the City's lien to the amount of the wrongful death recovery allocated to lost wages damages. Accordingly, we conclude that the City's lien attaches to the entire amount of the wrongful death award paid to Heidi.

III
The City also contends that its lien should attach to the survival claim settlement. We disagree. It is clear, pursuant to N.J.S.A. 34:15-4, that an employer's lien for dependency benefits is limited to third party recoveries in wrongful death actions. That section of the statute provides that:
Death of employee
The provisions of this article shall apply to any claim for the death of an employee arising under sections 2A:31-1 to 2A:31-6 of the New Jersey Statutes.

[N.J.S.A. 34:15-4.]
A survival action claim clearly does not arise under N.J.S.A. 2A:31-1 to -6.
Moreover, a survival claim is the decedent's own for "damages accrued during the lifetime of the decedent," which is prosecuted by a personal representative. N.J.S.A. 2A:15-3. Here, the survival claim is for the pain and suffering that DeLane experienced from the time of the first electrocution until his death. Ryan v. Pub. Serv. R.R. Co., 103 N.J.L. 145, 134 A. 650 (1926). Obviously, DeLane did not file a workers' compensation claim petition for his injury nor did he receive any temporary or permanent disability benefits himself. If he had survived and received such benefits, there is no doubt that, pursuant to N.J.S.A. 34:15-40, the City's lien for *518 such benefits would attach to his recovery for his pain and suffering. However, that is not the case. DeLane did not receive any such benefits. Therefore, the City has no lien against his estate. Roberts v. All Am. Eng'g Co., 104 N.J.Super. 1, 9, 248 A.2d 280 (App.Div.1968), certif. denied, 53 N.J. 351, 250 A.2d 753 (1969). There is one exception to this holding, in the event that DeLane's emergency room expenses were paid by the City, as a workers' compensation medical payment benefit, then the City has a lien for such medical payment only. This lien would attach to the survival claim settlement.
In Roberts, the decedent had received workers' compensation benefits from his employer for an injury sustained on the job. Id. at 4, 248 A.2d 280. He also recovered a settlement from a third party tortfeasor. Id. at 5, 248 A.2d 280. The employer's lien was paid from the third party recovery. Ibid. Several years later, after decedent's death as a result of a worsening of the work-related injury, his widow and children sought dependency benefits from the employer pursuant to N.J.S.A. 34:15-13. Ibid. The employer asserted full discharge from liability to the widow because the decedent's third party recovery exceeded the dependency benefits. Id. at 5-6, 248 A.2d 280. We held that because the widow had no legal rights in the fund created by her husband's individual third party action, the employer had no right to be subrogated to this fund for reimbursement of the dependency benefits. Id. at 9, 248 A.2d 280. The employer's lien was limited to the benefits paid to the decedent in his claim petition. Ibid.
Here, no benefits were paid to DeLane. The City argues that Heidi is in the shoes of her deceased husband by virtue of N.J.S.A. 2A:15-3 and that, therefore, the City's lien should to attach to the survival claim recovery. Not so. It is a mere coincidence that DeLane's personal representative and heir is also the recipient of the dependency workers' compensation benefits. That coincidence has no legal significance in the context of N.J.S.A. 34:15-40. Heidi, as an individual, has not recovered any damages for DeLane's pain and suffering. Accordingly, we conclude that the City's lien does not attach to the survival claim recovery.

IV
On cross-appeal, plaintiff, as Administratrix of the Estate, contends that the judge's "decision to grant [the City's] summary judgment motion was based on an erroneous reading of the substantial certainty exception to the workers' compensation exclusive remedy." We disagree. At the outset, we note that there is no "substantial certainty" exception.
New Jersey's workers' compensation statute contains an exclusive remedy provision that precludes employees from maintaining separate tort actions against their employers. N.J.S.A. 34:15-8 provides:
[i]f an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, except for intentional wrong.
Therefore, a separate tort action is allowed only when the employer committed an intentional wrong which requires actual intent or a "substantial certainty" that injury will occur as a result of its actions. Millison v. E.I. du Pont de Nemours & Co., 101 N.J. 161, 177-78, 501 A.2d 505 (1985). Plaintiff is not arguing that the City acted intentionally, but rather, that its deliberate disregard of a known harm created a substantial *519 certainty that DeLane would be electrocuted. For this reason, she contends that the City's conduct falls within the intentional wrong exception and, therefore, summary judgment was improperly granted.
Plaintiff points to a number of facts to demonstrate that the City deliberately disregarded a known harm which, in turn, would create a substantial certainty that DeLane would be electrocuted. Plaintiff asserts that it was common practice within the City's Fire Department to violate federal and state laws governing electrical hazards. Captain Paynter testified that ladders were raised "even if not needed" and in close proximity to high voltage wires hundreds of times. In training, the City's firefighters are not informed of the "10 foot rule," a federal law regarding proximity limitations to high voltage wires. Further, the Division of Fire Safety Investigation concluded that the City had violated safety statutes including: (1) the non-production of written, standard operating procedures concerning electrical hazards which constitutes a violation of New Jersey's Public Employees Occupational Safety and Health Administration (PEOSHA) and federal Occupational Safety and Health Administration (OSHA) regulations; (2) lack of specialized training for electrical hazards; and (3) non-availability of information about crucial safety regulations. For these reasons, plaintiff argues that the City made a deliberate decision to ignore a known harm in the face of a substantial certainty of DeLane's electrocution.
In Millison, the Supreme Court defined intentional wrong as a deliberate intent to injure, provable either by evidence of an actual subjective intent to injure or by proof of circumstances making it substantially certain to the actor that deleterious consequences will result from his action. Millison, supra, 101 N.J. at 178, 501 A.2d 505; see also N.J. Mfrs. Ins. v. Joseph Oat Corp., 287 N.J.Super. 190, 194-197, 670 A.2d 1071 (App.Div.1995). We stress that Millison did not change the intentional wrong standard, it merely clarified the manners in which it could be proven.
The Supreme Court stated that "[i]n order to satisfy the Compensation Act's definition of `intentional wrong', claimants have heretofore been required to show a deliberate intent to injure." Id. at 170, 501 A.2d 505 (citing Bryan v. Jeffers, 103 N.J.Super. 522, 523-24, 248 A.2d 129 (App. Div.1968), certif. denied, 53 N.J. 581, 252 A.2d 157 (1969)(holding that `intentional wrong' in the compensation statute means "deliberate intention" and is not equitable with gross negligence or similar concepts importing constructive intent)). The Supreme Court went on to emphasize how narrowly limited the exception is to be construed by citing Professor Larson's treatise on Workers' Compensation Law:
Even if the alleged conduct goes beyond aggravated negligence, and includes such elements as knowingly permitting a hazardous work condition to exist, knowingly ordering claimant to perform an extremely dangerous job, willfully failing to furnish a safe place to work, or even willfully and unlawfully violating a safety statute, this still falls short of the kind of actual intention to injure that robs the injury of accidental character.
[Id. at 171, 501 A.2d 505; (citing, 2A A. Larson, The Law of Workmen's Compensation, § 68.13 at 13-22 to 13-27 (1983)).]
The Court in Millison sought to delineate a standard by which it may be determined what exactly amounted to an `intentional wrong' to overcome the exclusivity provision. The Court adopted a `substantial certainty' test which requires, *520 in an intentional wrong case, a virtual certainty that the consequences would occur. Id. at 178, 501 A.2d 505. The Supreme Court pointed to two factors that further define the meaning of "deliberate intention to injure;" namely, conduct and context. Millison, supra, 101 N.J. at 178-79, 501 A.2d 505. For "conduct," the Court adopted a "substantial certainty" test. Id. at 178, 501 A.2d 505. There is only one level of intent sufficient to meet the "substantial certainty" test to overcome the exclusivity provision, and "[b]oth subjective intent and substantial certainty of harm are expressive of the same standard, i.e. deliberate intent to harm." N.J. Mfrs. Ins. Co., supra, 287 N.J.Super. at 197, 670 A.2d 1071. In considering "context," the Millison Court posed this query: "may the resulting injury or disease, and the circumstances in which it is inflicted on the worker, fairly be viewed as a fact of life of industrial employment, or is it rather plainly beyond anything the Legislature could have contemplated as entitling the employee to recover only under the Compensation Act?" Millison, supra, 101 N.J. at 179, 501 A.2d 505.
Compare McGovern v. Resorts Int'l Hotel, 306 N.J.Super. 174, 176, 703 A.2d 364 (App.Div.1997), wherein a casino employee was shot while trying to prevent the robbery of money from a cart she was transferring to an armored car. Defendant employer had received multiple complaints and was, therefore, well aware of the danger implicit in removing the money through the public area. Ibid. Plaintiff argued, against defendant's motion for summary judgment, that defendant had knowledge of a substantial likelihood of injury. Ibid. In granting summary judgment to defendant, the trial court stated that the plaintiff failed to satisfy N.J.S.A. 34:15-8's definition of "intentional wrong". Id. at 179, 703 A.2d 364. We affirmed. No "deliberate intent to injure" had been demonstratedawareness of a substantial likelihood of injury was insufficient. Ibid. "The facts indicate[d] negligence or, at most, recklessness on the part of [the defendant], and not a deliberate intention to harm its employees. An employer's knowledge and appreciation of a significant risk does not constitute the requisite intent needed to circumvent the Workers' Compensation statute." Id. at 181, 703 A.2d 364.
Further, in Marinelli v. Mitts & Merrill, 303 N.J.Super. 61, 696 A.2d 55 (App. Div.1997), it was held that the employer's failure to inform its employees of the explosive nature of its hair spray product, demonstrated only negligence, not an intentional act, in causing a workplace explosion. The court refused to find an intentional act despite the employer's alleged awareness that punctured hair spray cans had caused an explosion at another facility, and despite warnings from workers and the Occupational Safety and Health Administration about the dangers of shredding hair spray cans. Therefore, the personal injury claims brought by employees injured in the explosion did not fall within the intentional injury exception to workers' compensation immunity.
Here, viewing the record in the light most favorable to plaintiff, we agree with the judge that the conduct of some of the City's employees, albeit reckless, does not satisfy the intentional wrong standard. Summary judgment was properly granted to the City on this issue. Moreover, assuming that the conduct of the City's employees were deemed an intentional wrong, we agree with the trial judge that the City would be immune from liability pursuant to N.J.S.A. 59:2-10.
We also conclude that plaintiff's other contention on cross-appeal that the City waived any claim or defense as to the *521 reasonableness of the settlement allocation is clearly without merit and an opinion would have no precedential value. R. 2:11-3(e)(1)(E).
In summary, the October 7, 1998 order that granted summary judgment to the City is affirmed. The portion of the November 16, 1999 order limiting the City's lien to $64,466 to be paid only from the lost wages portion of the wrongful death settlement is reversed. The portion of the November 16, 1999 order which provides that the City "shall have no right to assert a lien and/or any right of repayment under N.J.S.A. 34:15-40" against the survival claim recovery is affirmed.
NOTES
[1] The workers' compensation lien is substantially larger. Heidi will receive a dependency benefit for 450 weeks at $447.90 per week, an estimated total of approximately $201,555 plus $47.90 per week, throughout the rest of the period of her widowhood, pursuant to N.J.S.A. 34:15-13.