**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1225-23

FAISAL JAMEEL, Administrator
ad Prosequendum for the ESTATE
OF AASIA JAMEEL,

     Plaintiff-Appellant,

v.

JENNIFER L. DEMBER, HMH
HOSPITALS CORPORATION,
d/b/a BAYSHORE MEDICAL
CENTER, i/p/a BAYSHORE
COMMUNITY HOSPITAL,

     Defendants-Respondents,

and

DIANE INGENITO, i/p/a BAYSHORE
COMM HOSP-D INGENITO-TAX,

     Defendant.

_____

Argued December 3, 2024 – Decided April 28, 2025

Before Judges Susswein and Perez Friscia.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7038-21.

Justin L. Klein argued the cause for appellant (Hobbie & DeCarlo, PC, and Justin Lee Klein, LLC, attorneys; Norman M. Hobbie, of counsel; Jacqueline DeCarlo, of counsel and on the briefs).

Stephen A. Rudolph argued the cause for respondent Jennifer L. Dember (Rudolph, Kayal & Almeida, PA, attorneys; Stephen A. Rudolph, on the brief).

Steven B. Farman argued the cause for respondent HMH Hospitals Corporation (DiCroce, McCann & Farman, LLC, attorneys; Joseph A. DiCroce, of counsel; Steven B. Farman, of counsel and on the brief).

PER CURIAM

In this wrongful death and survivorship case, plaintiff Faisal Jameel, Administrator ad Prosequendum for the Estate of Aasia Jameel,[1] appeals from the December 15, 2023 Law Division orders granting summary judgment dismissal in favor of defendants HMH Hospitals Corporation d/b/a Bayshore Community Medical Center (HMH) and Jennifer L. Dember.[2] HMH employed

---

[1] To avoid confusion, we refer to Faisal Jameel as plaintiff and to Aasia Jameel as decedent.

[2] The trial court also dismissed the complaint against another HMH employee, Diane Ingenito. Plaintiff did not oppose the motion to dismiss the claims against her and is not appealing that dismissal. In addition, plaintiff is not appealing the trial court's summary judgment order in favor of Bayshore Community

both decedent and Dember. Dember struck decedent with her car in an HMH employee parking lot, causing fatal injury. The general rule under the New Jersey Workers Compensation Act (WCA or Act), N.J.S.A. 34:15-1 to -147, is that an employee injured in the course of their employment may only recover from the employer pursuant to a workers' compensation claim. N.J.S.A. 34:15-7 and -8. N.J.S.A. 34:15-8 provides an exception to that general rule when an employer commits an "intentional wrong." Plaintiff alleges that HMH not only was negligent in the design and operation of the employee parking lot but also committed an intentional wrong by creating a substantial certainty that an employee would be seriously or fatally injured by virtue of the design and operation of the employee parking lot.

The trial court issued the two orders accompanied by a ten-page written opinion. With respect to HMH, the trial court granted summary judgment dismissal on its WCA affirmative defense, finding that there was no evidence HMH's committed intentional acts that were substantially certain to result in injury or death of its employees. The trial court also granted Dember summary judgment dismissing plaintiff's claim under the Act's co-employee immunity

Hospital, an entity HMH acquired after the underlying motor vehicle accident occurred, and Bayshore Comm Hosp-D Ingenito-Tax.

provision, reasoning that she and decedent were both acting in the course of their employment when the crash occurred. After reviewing the record in light of the parties' arguments and governing legal principles, we affirm both orders.

I.

We discern the following facts from the record. HMH employed decedent as a nuclear medicine technologist at the Bayshore Community Medical Center in Holmdel, New Jersey. Shortly before 7:00 a.m. on October 6, 2021, Dember drove her vehicle in HMH's parking lot striking decedent while she was walking to work at the hospital, resulting in her death.

Surveillance video and a subsequent investigation revealed the accident occurred while decedent was attempting to cross a T-intersection in the parking lot and Dember was attempting to make a left turn. Just before the accident, decedent parked her car along the far eastern edge of the employee parking lot. Dember testified that she did not see decedent before the crash. The surveillance video also shows that Dember's brake lights were not activated until she struck decedent.

Dember testified at her deposition that she had to be at work at 7:00 a.m. that day but it "wasn't an emergency to get to work." The work schedule indicated that her shift started at 6:45 a.m. She described the lack of stop signs,

A-1225-23

pedestrian crosswalks, crossing warnings, and sidewalks in the parking lot. There was also no peninsula at the end of the row of parking spaces. An eyewitness to the accident, Diane Cusick, was also deposed and testified to the lack of crosswalks.

HMH designated separate parking lots for employees and patients so that the parking spaces closest to the hospital building could be used by patients and visitors. At the time of the accident, Dember was driving to a designated portion of the back parking lot where HMH employees were instructed to park.

Plaintiff's engineering expert, Dr. Wayne F. Nolte, PhD, P.E., performed an engineering evaluation of the parking lot where the accident occurred and concluded, "[t]he incident site was in a hazardous condition on the day of this incident" due to "the lack of proper traffic control devices" needed to maintain the lot "in a safe condition." Nolte noted the pedestrian safety measures in the patient/visitor parking lot were different from the employee parking area where the crash took place. The patient/visitor parking lot had a peninsula to separate the parking spaces from the vehicular travel way, which increased visibility for drivers at the intersection. The lot also provided sidewalks, fences to separate pedestrian walkways from the vehicular travel way, crosswalks, a pedestrian warning sign, a vehicular stop sign, a stop line, and a warning cone.

A-1225-23

Nolte opined that, "[t]he lack of safe and consistent traffic control and pedestrian crossing devices throughout the [employee] parking lot on the north side" was "a significant contributing factor in causing this incident that resulted in the death of [decedent]."

Defendant's expert Dr. Timothy G. Noordewier, P.E., a certified traffic operations engineer, performed an evaluation of the employee parking lot to determine if the lot was designed in compliance with generally accepted engineering standards and practices for parking lot design. The evaluation also included an accident reconstruction to assess relative distances, vehicle speed, stopping distances, and Dember's sight lines.

Noordewier opined that the employee parking lot design "[met] or exceeded the standards of care for parking lots of this size and function." He concluded "the incident cannot be reasonably attributed, in part or in whole, to the as-built design or condition" of the parking lot as it existed at the time of the incident. Rather, he asserted that Dember's conduct was the sole cause of the crash.

HMH Director of Operations Caitlin Miller testified that prior to the date of the accident, she did not recall receiving complaints about the lack of crosswalks or middle aisles via email or written complaints.

A-1225-23

## II.

We briefly summarize the procedural history leading to this appeal. In December 2021, plaintiff filed a negligence action on behalf of decedent's estate against Dember and HMH, seeking compensatory damages under the Survivorship Statute, N.J.S.A. 2A:15-3, and Wrongful Death Statute, N.J.S.A. 2A:31-1.

Plaintiff amended the complaint in June 2022, adding premises liability claims against Bayshore Community Hospital, HMH Hospitals Corporation, and Igneito, along with a request for punitive damages against HMH. Plaintiff alleges her claims against HMH arise from:

> [T]he fact that the distant parking area where HMH required [decedent] to park was devoid of any pedestrian crossing markings, signage, walkways, fencing, cones, pavement markings, cautionary signage, speed signage, attendants, flaggers, traffic controllers, security, and/or any other pedestrian safety measures, thereby creating a substantial certainty that an employee such as [decedent] would be injured.

In addition to filing the civil suit, plaintiff filed a petition against HMH pursuant to the WCA. HMH certified that it is paying workers' compensation dependency benefits to decedent's spouse. HMH denied all allegations in its answer and asserted the Worker's Compensation bar to plaintiff's claims pursuant to N.J.S.A. 34:15-8 as an affirmative defense.

7

On March 17, 2023, plaintiff filed a second complaint for Millison[3]/Laidlow[4] "intentional wrong" claims and punitive damages claims against HMH. HMH denied all allegations and again asserted as an affirmative defense that the WCA provided exclusive remedies.

On November 2, 2023, HMH moved for summary judgment or, in the alternative, partial summary judgment seeking dismissal of the punitive damages claims. Dember filed a separate summary judgment motion that same day. The trial court heard oral argument on December 1.

On December 15, the trial court entered two orders accompanied by written statements of reasons, granting the summary judgment motions in favor of defendants. Based on its decision to dismiss plaintiff's intentional wrong claim against HMH, the trial court dismissed the punitive damages claim as moot.

This appeal followed. On appeal, plaintiff raises the following contentions:

POINT I

THE TRIAL COURT ERRONEOUSLY GRANTED SUMMARY JUDGMENT TO [HMH].

---

[3] Millison v. E.I. du Pont de Numerous & Co., 101 N.J. 161 (1985).

[4] Laidlow v. Hariton Machinery Co., 170 N.J. 602 (2002).

A-1225-23

A. The Summary Judgment Standard.

B. The Intentional Wrong / "Substantial Certainty"
Exception To The Workers' Compensation Bar.

C. The Trial Court's Erroneous Grant Of Summary
Judgment To HMH.

D. The Trial Court Also Erred In Granting Summary
Judgment As To Punitive Damages Against
[HMH].

POINT II

THE TRIAL COURT'S ORDER GRANTING
SUMMARY JUDGMENT TO [DEMBER] SHOULD
BE REVERSED.

III.

We begin our analysis by acknowledging the foundational legal principles

governing this appeal. Our review of a trial court's summary judgment decision

is de novo. DeSimone v. Springpoint Senior Living, Inc., 256 N.J. 172, 180

(2024). "The court's function is not 'to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial.'"

Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill v. Guardian Life

Ins. Co. of Am., 142 N.J. 520, 540 (1995)). We "accord no 'special deference'

to the 'trial court's interpretation of the law and the legal consequences that flow

from established facts.'" Cherokee LCP Land, LLC v. City of Linden Plan. Bd.,

234 N.J. 403, 414-15 (2018) (quoting <u>Manalapan Realty, L.P. v. Twp. Comm. of Manalapan</u>, 140 N.J. 366, 378 (1995)).

A non-moving party "cannot defeat a motion for summary judgment merely by pointing to <u>any</u> fact in dispute." <u>Brill</u>, 142 N.J. at 529. Thus, "once the moving party presents sufficient evidence in support of the motion, the opposing party must 'demonstrate by competent evidential material that a genuine issue of fact exists[.]'" <u>Globe Motor Co. v. Igdalev</u>, 225 N.J. 469, 479-80 (2016) (alteration in original) (quoting <u>Robbins v. Jersey City</u>, 23 N.J. 229, 241 (1957)). "[W]hen the evidence 'is so one-sided that one party must prevail as a matter of law,' . . . the trial court should not hesitate to grant summary judgment." <u>Brill</u>, 142 N.J. at 540 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 252 (1986)).

Turning to substantive legal principles, the WCA provides an exclusive remedy for injuries sustained in an "accident arising out of and in the course of employment." <u>See</u> N.J.S.A. 34:15-7 and -8. Our Supreme Court "[has] long recognized that [the WCA] is remedial legislation and should be given liberal construction in order that its beneficent purposes may be accomplished." <u>Kocanowski v. Twp. of Bridgewater</u>, 237 N.J. 3, 10 (2019) (quoting <u>Est. of Kotsovska ex rel. Kotsovska v. Liebman</u>, 221 N.J. 568, 584 (2015)). "For more

than a century, the [WCA] has provided employees injured in the workplace 'medical treatment and limited compensation "without regard to the negligence of the employer."'" Vitale v. Schering-Plough Corp., 231 N.J. 234, 250 (2017) (quoting Est. of Kotsovska, 221 N.J. at 584); see also N.J.S.A. 34:15-7. It has been described as a "historic 'trade-off,'" Laidlow, 170 N.J. at 605 (quoting Millison, 101 N.J. at 174), where the employer "assumes an absolute liability[,] [but] gains immunity from common-law suit, even though [it] [may] be negligent, and is left with a limited and determined liability in all cases of work-connected injury," Vitale, 231 N.J. at 250 (first alteration in original).

The WCA applies when an employer and employee accept its provisions "by agreement, either express or implied . . . ." N.J.S.A. 34:15-7. Furthermore, it states that:

> Such agreement shall be a surrender by the parties thereto of their rights to any other method, form or amount of compensation or determination thereof than as provided in this article and an acceptance of all the provisions of this article, and shall bind the employee for compensation for the employee's death shall bind the employee's personal representatives, surviving spouse and next of kin . . . as well as the employer . . . .
>
> [N.J.S.A. 34:15-8.]

N.J.S.A. 34:15-8 includes an exception to the general rule that the Act provide an exclusive remedy. The provision reads:

11

If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, <u>except for intentional wrong</u>.

[(Emphasis added).]

To determine whether the employee has demonstrated that an intentional wrong was committed, the Supreme Court in <u>Laidlow</u> held that the employee need not demonstrate "a subjective desire to harm." 170 N.J. at 613. Rather, the employee must satisfy a two-prong test concerning the employer's conduct and "the context in which that conduct takes place." <u>Id.</u> at 614 (quoting <u>Millison</u>, 101 N.J. at 179). More specifically, the Court created a rule whereby:

[T]wo conditions must be satisfied: (1) the employer must know that his actions are substantially certain to result in injury or death to the employee, and (2) the resulting injury and the circumstances of its infliction on the worker must be (a) more than a fact of life of industrial employment and (b) plainly beyond anything the Legislature intended the [WCA] to immunize.

[<u>Id.</u> at 617.]

A trial court's consideration of these two conditions involves "the totality of the facts contained in the record." <u>Id.</u> at 623-24. Furthermore, as a general proposition, "the same facts and circumstances" are relevant to both prongs of

the test.  Mull v. Zeta Consumer Prods., 176 N.J. 385, 391 (2003) (quoting Laidlow, 170 N.J. at 623).

To satisfy the conduct prong, the employee must "establish the employer knew that its actions were substantially certain to result in injury or death to the employee."  Hocutt v. Minda Supply Co., 464 N.J. Super. 361, 375 (App. Div. 2020).[5]  Notably, "mere knowledge and appreciation of a risk[,]" recklessness, and gross negligence are each insufficient to meet this standard.  Van Dunk v. Reckson Assocs. Realty Corp., 210 N.J. 449, 452, 460 (2012) (quoting Millison, 101 N.J. at 177).  "[E]ven the strong probability of a risk . . . will come up short of the 'substantial certainty' needed to find an intentional wrong resulting in avoidance of the exclusive-remedy bar of the [WCA]."  Crippen v. Cent. Jersey Concrete Pipe Co., 176 N.J. 397, 407 (2003) (quotation marks omitted) (quoting Millison, 101 N.J. at 179).

As we emphasized in Hocutt, "the dividing line between negligent or reckless conduct on the one hand and intentional wrong on the other must be drawn with caution, so that the statutory framework of the [WCA] is not circumvented simply because a known risk later blossoms into reality."  464 N.J.

---

[5]  In Millison, the Court replaced the previous "deliberate intention" standard with the "substantial certainty" test.  101 N.J. at 178.

Super. at 375 (quotation marks omitted) (quoting Millison, 101 N.J. at 178).

Accordingly, the employee must show the employer "knew it was a 'virtual certainty' that plaintiff would be injured in the manner that [they] w[ere]." McGovern v. Resorts Int'l Hotel, Inc., 306 N.J. Super. 174, 181 (App. Div. 1997) (quoting Millison, 101 N.J. at 178).

In drawing the line between negligent/reckless conduct and intentional wrongdoing, we find helpful guidance in Laidlow. In that case, the Court held that an employer who removed a safety mechanism from a dangerous piece of equipment—thereby, deceiving safety inspectors regarding the use of appropriate safety mechanisms in the workplace—committed an intentional wrong. Laidlow, 170 N.J. at 606. It concluded that where such conduct involving the intentional and deceptively timed engaging and disengaging of safety equipment led to the machine crushing an employee's hand, both Millison's conduct and context prongs were satisfied. Id. at 606-07. Specifically, in determining the conduct prong was met, the Court cited "the prior close-calls, the seriousness of any potential injury that could occur, Laidlow's complaints about the absent guard, and the guilty knowledge of [the defendant] as revealed by its deliberate and systematic deception of [Occupational Safety and Health Administration]." Id. at 622-23.

To satisfy the context prong, the employee must demonstrate "the resulting injury and the circumstances of its infliction were more than a fact of life of industrial employment and plainly beyond anything the Legislature intended the WCA to immunize." Hocutt, 464 N.J. Super. at 375 (citing Millison, 101 N.J. at 178-79). This inquiry is purely a question of law for the court to decide. Laidlow, 170 N.J. at 623.

We deem it noteworthy for purposes of this appeal that courts applying the Laidlow test have found an employer's intentional wrong "in only rare and extreme factual circumstances." Kibler v. Roxbury Bd. of Educ., 392 N.J. Super. 45, 52-53 (App. Div. 2007).

IV.

We next apply these principles to plaintiff's contention the trial court erred in granting summary judgment in favor of HMH. HMH instructed decedent and Dember to use the parking lot which had less safety protections for pedestrians. That does not mean, however, HMH's decision constitutes an intentional wrong. Even viewing the evidence in the light most favorable to plaintiff, the decision to forego adding safety measures to the employee parking lot does not provide an objective basis upon which a reasonable juror could conclude that an intentional wrong was committed under the Millison test. We are unpersuaded

15

this evidence "transform[s] the company's negligence or recklessness into intentional wrong." Hocutt, 464 N.J. Super. at 382. Notably, the lack of any evidence of deception, record of accidents or employee complaints, "close-calls," or injuries as a result of the lack of safety features supports the conclusion that a reasonable juror could not find it was substantially certain that a fatal accident would occur. See Millison, 101 N.J. at 178 (demanding a "virtual certainty"); Bove v. AkPharma Inc., 460 N.J. Super. 123, 142-43 (App. Div. 2019) (explaining, for example, that "in addition to violations of safety regulations or failure to follow good safety practice, an intentional wrong will be found when it is accompanied by something more, such as deception, affirmative acts that defeat safety devices, or a willful failure to remedy past violations"). We thus conclude that plaintiff failed to establish the conduct prong. Because both prongs are required for plaintiff to overcome the WCA's immunity provision, plaintiff's appeal with respect to HMH fails.

We add that plaintiff has also failed to satisfy the context prong of the two-part test. As previously explained, to satisfy the context prong, plaintiff must demonstrate "the resulting injury and the circumstances of its infliction were more than a fact of life of industrial employment and plainly beyond

16

anything the Legislature intended the WCA to immunize." Hocutt, 464 N.J. Super. at 375.

In this case, it is undeniable that a parking lot with the lack of pedestrian safety features poses risks. But even if we were to assume for the sake of argument that HMH knew to a substantial certainty an injury or death like this would occur, we are unpersuaded that the condition of the parking lot is plainly beyond anything the Legislature intended the WCA to immunize. See Millison, 101 N.J. at 179.

V.

Correspondingly, we also reject plaintiff's contention that the trial court erred in dismissing its claim for punitive damages against HMH. Plaintiff argues that:

> A reasonable jury could find that failing to include safety features in the area of the lot where nurses were required to park when HMH knew these features were necessary and included them in the management parking area demonstrated a "wanton and willful" disregard for the nurse's safety with knowledge of a high degree of probability of harm to another and reckless indifference to the consequences of such act or omission.
>
> [(Citing N.J.S.A. 2A:15-5.10).]

17

We acknowledge that a punitive damages claim need not be predicated upon "actual malice," but can be based on a finding of "wanton and willful disregard" pursuant to N.J.S.A. 2A:15-5.10. The law is well settled, however, that punitive damages "are not to be applied in the ordinary unaggravated tort case." Berg v. Reaction Motors Div., 37 N.J. 396, 413 (1960). Rather, "there must be a deliberate act or omission with knowledge of a high degree of probability of harm and reckless indifference to [the] consequences." Id. at 4l4.

We conclude that even viewing the punitive damages claim in the light most favorable to plaintiff, it cannot satisfy the wanton and willful threshold essentially for the same reasons plaintiff cannot establish the intentional wrong exception to the WCA.

## VI.

We next turn our attention to plaintiff's argument the trial court erred in granting summary judgment to Dember under the WCA's co-employee bar to civil suits set forth in N.J.S.A. 34:15-8. As we have noted, recovery under the WCA is "the exclusive remedy for an employee who sustains an injury in an accident that arises out of and in the course of employment." McDaniel v. Man Wai Lee, 419 N.J. Super. 482, 490 (App. Div. 2011) (quoting Ahammed v. Logandro, 394 N.J. Super. 179, 190 (App. Div. 2007)). This exclusivity bar also

18

prohibits an injured employee's legal action to recover for injuries caused by a fellow employee. See Barone v. Harra, 77 N.J. 276, 278 (1978) (reiterating that the Act "precludes tort actions against fellow employees for compensable injuries occurring while both persons are in the same employ, except for intentional wrongs"); see also McDaniel, 419 N.J. Super. at 490.

The critical fact-sensitive question is whether this tragic car accident arose "out of and in the course of employment." We conclude it did—a conclusion consistent with our holding in Section IV that this accident falls within the scope of the WCA for purposes of precluding the civil suit against HMH.

We are unpersuaded by plaintiff's argument that because Dember's work shift started approximately fifteen minutes before the accident that she was not performing any work functions/duties in the scope of her employment at the time of the accident. Nor are we persuaded by plaintiff's contention that "the fact that Dember and [decedent] were co-employees was essentially a 'mere coincidence' with no inherent connection to the actual work they performed."

Plaintiff's reliance on Mule v. New Jersey Mfrs. Ins. Co., 356 N.J. Super. 389 (App. Div. 2003), is misplaced. In Mule, we held that the WCA did not bar the motorist benefits claim filed by an employee who was injured upon his return to work from a company picnic. 356 N.J. Super. at 398. There, another

employee who had also returned to the premises for the purposes of taking a shower and changing clothes before heading to a tavern, struck the plaintiff with his car in the parking lot. Ibid. We found it significant that the other employee was not on the employer's premises in anticipation of doing any work there. Id. at 397. That fact distinguishes the case from the matter before us.

Likewise, plaintiff's reliance on Manole v. Carvellas is unavailing. 229 N.J. Super. 138 (App. Div. 1988). In Manole, we reversed summary judgment and remanded for trial after determining that when the employees are not acting within the scope of employment at the time of the car accident, the fact that the parties were co-employees was a mere coincidence. 229 N.J. Super. at 142-143. We explained that:

> [T]here is no question that at the time of the accident [the] plaintiff had not yet left her employer's premises and control. Clearly, if her work day began when she entered the designated lot, it did not end until she left it. But just as obviously, it is not her status as an . . . employee which is critical but rather that of [the co-employee]. If [the co-employee] was not yet within the scope of his employment when the vehicles collided, the fact that he was also an employee . . . would be a mere coincidence without legal significance, and [the] plaintiff would be as free to sue him in a third-party action as anyone else. We are satisfied that this is so.
>
> [Ibid.]

20

We further emphasized a critical fact that distinguishes <u>Manole</u> from the case now before us, reasoning that:

> When the collision occurred, [the co-employee] was at least half a mile away from the designated lot. He was in the process of leaving a public street and entering a service road, which itself was not within [the employer's] "control" as defined by <u>Livingstone [v. Abraham Straus, Inc.]</u>, 111 N.J. [89,][] 104 [(1988)]. Before arriving at the designated lot, he was required to traverse yet another public street. Thus, in our view and in <u>Livingstone</u> terms, he had not yet arrived at his employer's premises. He was en route and would have arrived only upon entering the designated lot.
>
> [<u>Id.</u> at 143.]

In contrast, the case that HMH relied on, <u>Konitch v. Hartung</u>, 81 N.J. Super. 376 (App. Div. 1963), provides persuasive guidance on how to interpret the present facts. In <u>Konitch</u>, we explained that:

> There can be no question that when [the] defendant drove to work and entered the parking lot provided by the company, he was in the course of employment. An accident arises "in the course of employment" when it occurs within the period of employment and at a place where the employee may reasonably be. Our courts have held that the employer's parking lot is part of the employment premises, and an employee entering or using the lot in the circumstances here present is in the course of employment.
>
> [81 N.J. Super. at 382-83 (internal citations omitted).]

21

Cf. Livingstone, 111 N.J. at 104 ("[I]rrespective of whether [the] appellant's parking directive was 'enforced' by one of its security guards, we believe [the] respondent's workday commenced when she arrived in her car at the section of the mall lot adjacent to [the] appellant's premises, and therefore was in the course of employment when the accident occurred.").

Here, the car accident involved two HMH employees, it took place on HMH's property in a designated employee parking area, and both employees

were in the parking lot for the purposes of starting their workday.[6]  In these circumstances, we conclude that the WCA's co-employee immunity bar applies.

To the extent we have not specifically addressed them, any remaining arguments raised by plaintiff lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

---

[6]  We note in the interest of completeness that N.J.S.A. 34:15-36's definition of "employment" was amended to include arriving at a designated employee parking area.  The statute was amended to add the following:

> Employment shall also be deemed to commence, if an employer provides or designates a parking area for use by an employee, when an employee arrives at the parking area prior to reporting for work and shall terminate when an employee leaves the parking area at the end of a work period; provided that, if the site of the parking area is separate from the place of employment, an employee shall be deemed to be in the course of employment while the employee travels directly from the parking area to the place of employment prior to reporting for work and while the employee travels directly from the place of employment to the parking area at the end of a work period.
>
> [N.J.S.A. 34:15-36.]

The statutory amendment took effect on January 10, 2022, after the October 6, 2021 crash in this case.  We have not considered this amendment in arriving at our conclusion.

A-1225-23